Francisco E. SALAZAR, Appellant,

v.

STATE of Alaska, Appellee.

No. 2567.

Supreme Court of Alaska.

April 6, 1977.

Frank S. Koziol, Jr., Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

Daniel W. Hickey, Chief Prosecutor, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

BURKE, Justice.

In this sentence appeal, appellant Salazar challenges the superior court's imposition of two consecutive five-year terms for the sale of small quantities of marijuana.

Francisco Salazar was indicted on August 9, 1974, on four counts of sale of marijuana.[1] He was charged with making four sales over a five month period to George Petry, an undercover agent, and Petry alleged that approximately one ounce of marijuana was sold during each of the

---

1. AS 17.12.010 provides:

    Except as otherwise provided in this chapter, it is unlawful for a person to manufacture, compound, counterfeit, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, a depressant, hallucinogenic or stimulant drug.

    AS 17.12.110 provides in part:

    (b) [A] person who violates a provision of this chapter relating to the possession or

control of depressant, hallucinogenic and stimulant drugs, when his possession or control is for the purpose of sale or other disposal to another person, is guilty of a felony and upon conviction is punishable as follows:

    (1) for the first offense, by imprisonment for not more than 25 years, or by a fine of not more than $25,000, or by both.

    (2) for the second and subsequent offenses, by imprisonment for any term of

first three transactions, the fourth sale being for a pound of the substance. Salazar entered a plea of guilty to Counts III and IV of the indictment, and as a result of a plea agreement, the other two counts were dismissed.

Although at the time of sentencing, the prosecutor asserted that the defendant had solicited the sales, Petry later testified at a hearing on a motion to reduce sentence that he had asked Salazar to sell him some marijuana on at least thirty different occasions and that Salazar had responded to the solicitations only four times.[2] During the initial sentencing hearing, the prosecutor also represented to the judge that Salazar was involved with the sale of other drugs and that he had two young girls selling marijuana for him in return for room and board. However, at the later hearing, Petry indicated that he could only infer that anyone sold drugs for Salazar, since he had no specific knowledge of where the girls had obtained the marijuana which they offered for sale.

Salazar was 36 at the time of sentencing. He was in good physical health, had an eighth grade education, and had been separated from his family for some time. The trial court considered a presentence report which had been prepared in connection with Salazar's conviction for murder in January of 1975.[3] This report revealed that from the age of 19 to 29, Salazar had been convicted of seven offenses, almost all of which related to his use of alcohol and marijuana.[4] The most serious of the convictions was for smuggling marijuana, for which Salazar served six months of a five year sentence. Salazar had no record of convictions from 1968 until his murder conviction in 1975.

Also included in the presentence report were the conclusions of psychologist Jon Burke and psychiatrist Aron Wolfe, both of whom examined Salazar immediately after his conviction for murder. Burke found Salazar to be dull-normal, possibly suffering from minimal brain disfunction, and suffering from a paranoid personality disorder. Dr. Burke also concluded in part:

> Mr. Salazar appears to suffer from a paranoid personality disorder under which exists a psychotic process, a combination that could make consideration of parole

years or life, or by a fine of not more than $25,000, or by both.

2. At the hearing on motion to reduce sentence Petry testified as follows:

> MR. KOZIOL: All right. So it's reasonable that on 30 occasions you attempted to buy marijuana from [Salazar] and you were successful on four occasions. Is that fair?

> MR. PETRY: (Pause) I–I guess it would be fair to say that.

3. We subsequently reversed Salazar's murder conviction in *Salazar v. State*, 559 P.2d 66 (Alaska 1976).

4. Salazar's presentence report showed the following criminal record:

| His Age | Date | Place | Offense | Disposition |
|---|---|---|---|---|
| 19 | 11/28/58 | Ariz. | Petty Theft | $300 fine |
| 21 | 5/23/60 | Ariz. | Illegal Consumption, Drunk Driving | $235 fine |
| | 2/26/60 | Calif. | Possession of Marijuana | 60 days |
| 25 | 12/21/64 | Calif. | Breach of Peace, Possession of Dangerous Drugs | 2 years probation, week to serve |
| 28 | 12/2/67 | Calif. | Vehicle Code | $75 fine |
| 29 | 4/15/68 | Calif. | 647F Penal Code Drunk | 12 Months' Probation, $50 fine |
| | 11/16/68 | Calif. | Smuggling Marijuana | 5 years/6 months to serve |
| 35 | 7/29/74 | AK | Murder | Life |
| | 8/12/74 | AK | Sale of Marijuana | Present Offense |

very difficult if not hazardous due to his lack of internal control.

Wolfe found Salazar to be depressed, with a chronically marginal hold on reality, and he recommended treatment in a psychiatric unit.

At the sentencing hearing, the prosecutor argued that as a multiple felon with a first degree murder conviction, Salazar was a danger to the community and required extended imprisonment. The trial court apparently agreed with this conclusion, characterizing Salazar as "a danger to society" and "one of the worst offenders because of [his] consistent and persistent violation of the [law]." The court then imposed two consecutive five-year terms, 50% of each to be served before eligibility for parole. At the later hearing on a motion to reduce sentence, the trial judge stated for the record that he did not consider Salazar's murder conviction in reaching his sentencing decision.

■ Appellant contends *inter alia* that the sentence imposed by the trial court was excessive. In *State v. Chaney*, 477 P.2d 441 (Alaska 1970), we discussed the scope of this court's review in sentence appeals and held that we will modify a challenged sentence only "if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did."[5] The *Chaney* opinion also enunciated the proper sentencing goals for the trial court to consider in determining an appropriate sentence for a particular offense. These include rehabilitation of the offender, isolation of the offender in order to protect the public, deterrence of the offender and of other members of the community who might possess similar criminal tendencies, and reaffirmation of societal norms.[6] Although the record reflects that the trial court considered several of these factors at the time of sentencing, we find that the sentencing objectives articulated in

*Chaney* were not best served by the imposition of a ten-year sentence in this case.

In *Waters v. State*, 483 P.2d 199 (Alaska 1971), we recommended that judges consider four categories of drug offenses when making sentencing determinations. These four classes are arranged in descending order of gravity:[7]

1. Smuggling or sale of large quantities of narcotics or possession of large quantities for sale.

2. Smuggling or sale of small quantities of narcotics or possession of small quantities for sale.

3. Possession of narcotics without intent to sell.

4. Marijuana offenses.

Of these offenses, Salazar's fall into the most innocuous class, and consequently he should, if his offenses are viewed alone, be sentenced on the short end of the spectrum.[8]

■ Although sentencing is an individualized process and uniformity is not a goal of sentencing review, we have previously noted that "if two persons of identical background commit the same offense, they should receive like punishment." *Burleson v. State*, 543 P.2d 1195, 1202 (Alaska 1975). An examination of other sentences imposed on drug offenders in Alaska reveals that ten years is quite a severe sentence for any type of drug offense.[9] Given the small amount of marijuana sold to Petry after the agent's repeated requests, Salazar should have been sentenced more leniently, especially when the drug convictions are considered alone. Although we affirmed Water's sentence of ten years for the sale of cocaine on the basis that he was simultaneously sentenced for an armed robbery conviction and had previously been convicted of larceny in a building, we noted that:

Considering the drug conviction alone, we would entertain serious doubts as to the

---

5.  477 P.2d at 444.

6.  *Id.*

7.  483 P.2d at 201.

8.  Of course, marijuana offenses themselves can be more or less serious depending on the

amount of the substance which is smuggled or sold.

9.  Erwin, Five Years of Sentence Review in Alaska, 5 UCLA–Alaska L.*Rev.* 1, 11 (1975).

efficacy of a long period of incarceration of appellant for a single violation of our drug laws, particularly where on the record before us it appears that the sale in question was motivated by appellant's own addiction to drugs. Given a single transaction involving small quantity of the drug a short period of incarceration, with greater emphasis on probation, is more likely to be an appropriate sentence. 483 P.2d at 201–02.

We find this reasoning to be applicable to the instant case.

■ We adopted in *Donlun v. State*, 527 P.2d 472 (Alaska 1974) the American Bar Association's view that "except for cases involving *particularly* serious offenses, dangerous offenders and professional criminals, maximum prison terms ought not to exceed 5 years." [10] As discussed above, the offenses committed by Salazar can be characterized as among the least serious of drug offenses, and in this case the maximum sentence should not be longer than five years. Furthermore, there appears to be no justification for imposing a minimum amount of time to be served before appellant becomes eligible for parole. Thus, we hold that a ten year sentence in this case was excessive and that the trial court was clearly mistaken in imposing such a sanction. We remand for resentencing.

■ Appellant has also raised the issue of whether his guilty pleas should be withdrawn as a result of the prosecutor's alleged violation of the plea agreement.[11] However, at the time that defense counsel objected to the prosecutor's sentencing argument as violative of the plea agreement, the prosecutor offered to allow the plea to be withdrawn.

10. 527 P.2d at 475.

11. Rule 32(d)(1)(ii)(dd)(A), Alaska Rules of Criminal Procedure, provides that:
    The court shall allow the defendant to withdraw his plea of guilty . . . whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct manifest injustice.

        .    .    .    .    .

MR. BRANCHFLOWER: Thank you. Now with regard to the agreement between Mr. Koziol and myself, . . . my understanding was that we'd come in and I would be free to argue the facts of the case from the police reports, from the probation—or from the presentence report and the psychiatric reports, but that I would refrain from recommending a specific length of time, which I have done I think. *Now, I think that if Mr. Kozoil is unhappy with—or feels that I have somehow betrayed him, why I would not oppose him withdrawing—or having his client withdraw a guilty plea at this time, prior to sentencing by Your Honor.* (emphasis added)

The appellant's failure to withdraw his plea of guilty at that point in the proceedings constituted a waiver of this argument at trial and precludes our consideration of the issue on appeal.

REVERSED and REMANDED.

Withdrawal is necessary to correct a manifest injustice whenever the defendant demonstrates that:

    .    .    .    .    .

He did not receive the charge or sentence concessions contemplated by the plea agreement, and

    .    .    .    .    .

the prosecuting attorney failed to seek or opposed the concessions promised in the plea agreement . . . . .