**Darryl HUFF, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3201.**

Supreme Court of Alaska.

Sept. 16, 1977.

---

Linda L. Walton, Hoppner & Hedland, Fairbanks, for appellant.

Richard J. Ray, Asst. Dist. Atty., and Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, J. Pro Tem. ·

## OPINION

DIMOND, Justice Pro Tem.

. This is a sentence appeal.

Darryl Huff, at twenty-four years of age, is a heroin addict. He was indicted on four counts of selling the narcotic drug heroin, in violation of AS 17.10.010.[1] Under the terms of a negotiated plea, arrived at through a process known as "plea bargaining" or "charge bargaining,"[2] the state dismissed two counts of the indictment, in addition to a probation revocation petition arising from Huff's prior conviction of another crime.[3] In exchange, Huff entered a plea of nolo contendere to two counts of the indictment.

Huff was sentenced to four years imprisonment on each of the two counts, with the sentences to run consecutively. In effect, this amounted to an eight-year sentence. However, the judge suspended the sentence on the condition that Huff participate in,

1. AS 17.10.010 provides:

 It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, or compound any narcotic drug except as authorized in this chapter.

2. "Plea, sentence or charge bargaining" is a process whereby the accused agrees to enter a guilty plea or a plea of nolo contendere in exchange for a reduced charge or what he might expect to be the imposition of a lesser sentence than he would receive if found guilty after trial. This process involves an agreement among the accused, his counsel, the prosecuting attorney and the sentencing judge.

 In *State v. Carlson,* 555 P.2d 269, 273 n. 4 (Alaska 1976) (concurring opinion), it was stated:

 > Since August of 1975 the Attorney General has instituted a policy which purports, in its general outlines, to prohibit all state prosecutors from sentence bargaining and also, for the most part, charge bargaining.

 In *State v. Buckalew,* 561 P.2d 289 (Alaska 1977), we stated:

 > [H]enceforth Alaska's trial judges shall be totally barred from engaging in either charge or sentencing bargaining.

3. The revocation proceedings that were dismissed arose from Huff's prior conviction of receiving and concealing stolen property where he had been placed on probation for two years.

and complete a two-year drug rehabilitation program at the Family House in Anchorage. A representative of the Family House and a heroin addict who had completed the program testified that they had interviewed Huff and found him to be willing to participate in the program and that he was a suitable candidate for treatment. At the conclusion of the two-year treatment at the Family House, Huff was to be on probation for the balance of the term of the sentence imposed.

After staying two weeks at the Family House, Huff filed a motion to modify his sentence. At a hearing in the superior court, he told the judge that he had left the Family House because the rules of that institution forbade him to practice his religion, which included reading the Bible. He said that his inability to practice his religion affected adversely his ability to respond to the .drug rehabilitation treatment. The judge then sentenced Huff to eight years imprisonment on each of the two counts of the indictment, with the sentences to run concurrently. Huff has appealed, contending that the sentences are excessive.

■ Before passing on the assertion that the sentence was excessive, we are required under the doctrine of plain error to notice a point not argued in appellant's brief, *i.e.,* that the modification of the sentence from two consecutive four-year terms of imprisonment to two concurrent terms of eight years each is illegal. The reason is that the modification or resentencing was in effect an increase of the sentence, and this is barred by the principle of double jeopardy under our decision in *Sonnier v. State,* 483 P.2d 1003 (Alaska 1971). Admittedly, at first glance, it does appear that the sentences were identical; for the total length of time of imprisonment is eight years whether two four-year consecutive sentences or two eight-year concurrent sentences are imposed. But a simple example of what could possibly occur after Huff began service of his sentence would illustrate that the second or modified sentence is more severe. It is within the realm of possibility that Huff could have attacked one of the two four-year consecutive sentences on one count of the indictment as being illegal for any of the reasons set forth in Criminal Rule 35(b), dealing with applications for post-conviction relief.[4] If he were successful in this effort, he would have remaining four years of imprisonment to serve. On the other hand, if he successfully attacked the sentence on the same count of the indictment after he was given two eight-year concurrent sentences, he would have eight years of imprisonment left to serve, instead of four. Clearly, this means that the second or modified sentence was more severe, or was an "increase" in the original sentence within the meaning of the double jeopardy provision as discussed in *Sonnier. Cf. Whitton v. State,* 479 P.2d 302, 314 (Alaska 1970); *Gray v. State,* 463 P.2d 897, 911 (Alaska 1970).

Turning now to the contention that the sentence of eight years was excessive, the

---

4. Criminal Rule 35(b) states:

Any person who has been convicted of, or sentenced for, a crime and who claims:

(1) that the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of Alaska;

(2) that the court was without jurisdiction to impose sentence;

(3) that the sentence imposed exceeded the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law;

(4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

(5) that his sentence .has expired, his probation, parole or conditional release have been unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint;

(6) that the conviction or sentence is otherwise subject to collateral attack upon any ground or alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy; or

(7) that there has been a significant change in law, whether substantive or procedural, applied in the process leading to applicant's conviction or sentence, when sufficient reasons exist to allow retroactive application of the changed legal standards;

may institute a proceeding under this rule to secure relief.

facts show that on two separate occasions Huff sold to police informants a quarter ounce each of heroin for approximately $700 for each sale. But he made no profit. Being an addict himself, he would take the money given to him by the informants and give it to the seller of the narcotics. In return he would obtain some heroin, not only for the informants to bring back to the police, but also for himself to "feed" a $200–$300 a day "habit." [5]

A determination of what degree of punishment should be given for a drug offense depends on the gravity of the offense. Large scale operations where sales of drugs are made in substantial amounts would call for more severe punishment than sales of small or moderate amounts of drugs. The latter, in turn, is generally punishable by greater penalties than the instances where one possesses narcotics for his own use and without intent to sell.[6]

In *Waters v. State,* 483 P.2d 199, 201 (Alaska 1971), we specified four groups of drug offenders whose crimes were set forth in descending order of seriousness. There we stated the groups to be:

1. Smuggling or sale of large quantities or possession of large quantities for sale.
2. Smuggling or sale of small quantities or possession of small quantities for sale.
3. Possession of narcotics without intent to sell.
4. Marijuana offenses.

The state argues that Huff does not fit into category two. That may be true because the sales he made—one quarter ounce on each of two occasions—were not of "small quantities." Nor does he fit into the first category because these transactions did not involve sale of "large quantities." Probably, he falls somewhere between categories one and two. But he was not what Justice Rabinowitz referred to as a "titan" of the narcotics industry.[7] The sales of heroin he made were for the sole purpose of being paid in kind by the dealer above him in order that he could continue to satisfy his addiction to heroin by getting the drug for his own use. He was what he described as the "middleman" and not the non-addictive seller of narcotics in substantial quantities who makes a considerable profit out of this illegal enterprise.

One addicted to the drug heroin is afflicted with an illness as much as is one addicted to the drug alcohol.[8] In 1925 the United States Supreme Court recognized that persons addicted to narcotics "are diseased and proper subjects for [medical] treatment." [9] Then in 1962 that court, in the case of *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), held it to be cruel and unusual punishment to punish an individual because of his or her "status" as an addict of narcotic drugs. There the court said:

> It is unlikely that any State at this moment in history would attempt to make it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease. . . . [I]n light of contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in viola-

---

5. What this means is that Huff used each day an amount of heroin which, at street prices, would have cost him from $200 to $300.

6. *Salazar v. State,* 562 P.2d 694 (Alaska 1977); *State v. Trunnel,* 549 P.2d 550, 552 (Alaska 1976); *Waters v. State,* 483 P.2d 199, 201 (Alaska 1971).

7. *Waters v. State,* 483 P.2d 199, 201 (Alaska 1971).

8. In 1972, the Alaska Legislature adopted the Uniform Alcoholism and Intoxication Treatment Act [AS 47.37.270(12)] where it is stated:

> It is the policy of the state that alcoholics and intoxicated persons should not be criminally prosecuted for their consumption of alcoholic beverages and that they should be afforded a continuum of treatment so they may lead normal lives as productive members of society.
>
> Whether addiction to heroin, and possibly other drugs, should be considered as an illness and not a crime is a subject for legislative consideration.

9. *Linder v. United States,* 268 U.S. 5, 18, 45 S.Ct. 446, 69 L.Ed. 819, 823 (1925).

tion of the Eighth and Fourteenth Amendments.

We cannot but consider the statute before us as of the same category. In this Court counsel for the State recognized that narcotic addiction is an illness. Indeed, it is apparently an illness which may be contracted innocently or involuntarily. We hold that a state law which imprisons a person thus afflicted as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment. To be sure, imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual. But the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold.[10]

A discussion of the problems inherent in treating drug addiction as a crime and the advantages gained by treating it as a disease is contained in an article: "The Eyes of the Beholder: The Drug Addict as Criminal, Patient, or Victim."[11] In this discussion the authors noted, among other things, that:

The American Bar Association's Special Committee on Crime Prevention and Control, in its report *New Perspectives on Urban Crime* not only reached the conclusion that the problem of urban street crime is primarily the problem of heroin

addiction but recommended that the 'federal, state and local governments . . . discard their current law enforcement oriented strategy toward addiction control and adopt a policy which places primary emphasis on the treatment of addiction.' They have recommended pretrial diversion of addicts.[12]

It is not generally our function to encroach upon the legislature's prerogative of declaring what is criminal in nature and what is not. The legislative branch has made the sale and use of narcotic drugs a crime—one with severe penalties.[13] In a case like this, our only prerogative is to determine under the circumstances of the case whether an eight-year sentence for two sales of one-quarter ounce each of heroin is excessive.

When the two consecutive four-year sentences were first imposed, the judge was attempting to fashion a severe enough sentence so as to give Huff a real incentive to complete the two-year drug rehabilitation program at Family House. This appears to us to have been a sound approach and one which we cannot say was a mistake. But when the original sentence was modified to two concurrent eight-year sentences, the judge did not state his reasons for imposing this punishment, as he is required to do under Appellate Rule 21(f)(2). The only statement he made with respect to this sentence was that Huff would be eligible for parole in 30 months and could, in that time, rehabilitate himself and become a respected member of society.[14]

---

**10.** 370 U.S. at 666–67, 82 S.Ct. at 1420–1421, 8 L.Ed.2d at 763 (footnotes and citations omitted).

**11.** Cuskey & Krasner, Contemporary Drug Problems, Vol. 2, page 579 (1973).

**12.** *Id.* at 584.

**13.** AS 17.10.200(a) provides:

A person who violates any provision of this chapter except a provision relating to the keeping of records, upon conviction, is punishable by a fine of not more than $5,000 and by imprisonment for not less than two nor more than 10 years. For a second offense, or for a first offense where the offender has previously been convicted of a violation of

the laws of the United States or of any other state, territory or district relating to narcotic drugs, the offender is punishable by fine of nor more than $7,500 and by imprisonment for not less than 10 nor more than 20 years. For a third or subsequent offense, or if the offender has previously been convicted two or more times of a violation of the laws of the United States or of any other state, territory or district relating to narcotic drugs, the offender is punishable by a fine of nor more than $10,000 and by imprisonment for not less than 20 nor more than 40 years.

**14.** We have stated on numerous occasions that the sentencing goals to be considered by a judge in determining an appropriate sentence for a particular offense include not only reha-

At the present time a prisoner may become eligible for parole if the presiding judge, at the time of sentencing, designates a minimum period which the prisoner must serve in prison before being eligible for parole which, according to statute, "shall be at least one-third of the maximum sentence imposed by the court." [15] But it does not follow from this that there is any certainty that a prisoner, such as Huff, would actually be paroled at that time. As has been recently stated in "Parole in Alaska," [16] published in January 1977:

> There is an increasing tendency among judges as well as in editorial comment to consider that those convicted of a crime will be automatically released on parole when one-third of the time is served. Yet, less than one-third of those heard by the parole board in 1976 were actually paroled, and these individuals served almost half their sentence before being released. In addition, the criteria for determining who is paroled seems reasonable. All in all, the parole process in Alaska appears to be effective and not at all lenient.

Thus, the odds based on existing data do not favor Huff's chances of being paroled in 30 months after being sentenced for a total period of eight years. We feel that we cannot rely on the uncertain possibility of parole in determining whether a sentence is excessive.

The decision we must make is whether the sentencing judge was clearly mistaken in imposing two concurrent eight-year sentences for a total period of imprisonment—absent parole—of eight years. In this respect, we have stated:

The scope of this court's sentence review authority requires that we make our own examination of the record with particular emphasis on the nature of the crime, the defendant's character and the need for protection of the public. The controlling standard of review in sentence appeal matters is whether the trial court's sentence was 'clearly mistaken.' [17]

The presentence report on Huff showed that he served three months in jail in 1973 for the malicious destruction of private property and later was placed on probation for two years in 1974 for receiving and concealing stolen property. The author of the presentence report recommended that Huff, age 23 at the time, be given a substantial period of incarceration and that such period be suspended upon Huff's completion of the two-year Family House drug rehabilitation program. But the probation-parole officer who made the report then went on to say:

> In order to provide additional incentive and to protect society, it is further recommended that should Mr. Huff fail to complete the Family House Program that whatever sentence is suspended be imposed and that the court order that he not be eligible for parole at any time during that sentence.

It appears that the author of the presentence report felt Huff was a person who was subject to rehabilitation, provided that he spent two years in the Family House. But if he failed to do this, which is what happened, then he was to be placed in prison for a substantial period of time with no chance of parole. A valid inference from this recommendation is that the probation-parole section of the Department of Health and Social Services believed that there

---

bilitation of the offender, but in addition, isolation of the offender in order to protect the public, deterrence of the offender and of other members of the community who might possess similar criminal tendencies and reaffirmation of societal norms embodying condemnation of the unlawful acts performed by the guilty person. *See, e.g., Salazar v. State,* 562 P.2d 694 (Alaska 1977); *Andrews v. State,* 552 P.2d 150 (Alaska 1976); *Waters v. State,* 483 P.2d 199, 202 (Alaska 1971); *State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970).

**15.** AS 33.15.230(a)(1).

**16.** Prepared by Merle P. Martin, Manager of Technical Operations, Office of the Administrative Director, Alaska Court System, January 1977.

**17.** *Gilligan v. State,* 560 P.2d 17, 19 (Alaska 1977), quoting from *Andrews v. State,* 552 P.2d 150, 158 (Alaska 1976).

would be no chance of rehabilitation of Huff while he was in prison.

We certainly trust this is not true. Art. I, § 12 of our constitution provides: "[p]enal administration shall be based on the principle of reformation and upon the need for protecting the public." In the past we have assumed, and we trust correctly, that both the Division of Corrections of the Department of Health and Social Services and the Parole Board are fully aware of the need for rehabilitation—particularly where a drug addict is concerned. We have confidence that they are so aware, but to emphasize this matter will state again what we said in *Waters v. State,* 483 P.2d 199, 202 (Alaska 1971):

> Given appellant's seeming inability to cope with his problem of drug addiction and his demonstrated danger to the safety of the community at large, it is imperative that necessary medical, psychiatric, and psychological treatment be made available to appellant during any period of incarceration or supervised parole. We therefore assume that the Division of Corrections and the Parole Board are fully cognizant of these reformative needs and will undertake appropriate measures to bring about appellant's early return to the status of a non-criminal member of our society.

This still leaves us with the main question on appeal: whether a sentence of imprisonment for eight years is excessive. We believe it is. Huff is a sick person, addicted to the narcotic drug heroin. All he got out of the sales he arranged for was the drug itself so that he could continue to "feed his habit."[18]

We have observed quite recently in *Salazar v. State,* 562 P.2d 694 (Alaska 1977), that an examination of other sentences imposed on drug offenders in Alaska shows that ten years is quite a severe sentence for any type of drug offense. We believe that under the circumstances of this case, where Huff himself suffered from an addiction to heroin and arranged sales solely to satisfy his craving for the drug, eight years is also quite a severe sentence. As we stated in *Salazar, supra* at 697, we have adopted the American Bar Association's view that "except for cases involving particularly serious offenses, dangerous offenders and professional criminals, maximum prison terms ought not exceed [five] 5 years."

■ It is our opinion that not only are the two eight-year concurrent sentences illegal and must be set aside, but also in regard to the contention that the sentence is excessive, Huff's drug offenses do not fit into a category deserving of a prison term of more than four years. We believe that the superior court was mistaken in imposing two concurrent sentences of eight years each and that a sentence of imprisonment for a period of time not to exceed four years[19] would more adequately effectuate the goals of penal administration, which we consider proper and necessary in imposing a sentence for this type of criminal behavior.[20]

This case is reversed and remanded for resentencing in accordance with the views expressed in this opinion.

REVERSED and REMANDED.

MATHEWS, J., not participating.

---

**18.** In *Waters* we recognized as a valid consideration when sentencing, the fact the defendant was motivated by his own addiction for drugs. 483 P.2d at 201.

**19.** Eligibility for parole and the possibility of a suspended sentence is left to the discretion of the sentencing judge.

**20.** For a review of sentence appeals which involved illegal drugs, see Erwin, *Five Years of Sentence Review in Alaska,* 5 UCLA–Alaska

L.Rev. 1 (Fall 1975). Since the article by Justice Erwin was published, this court has decided the following additional sentence appeals relating to drugs: *Davis v. State,* 566 P.2d 640, Opn. No. 1453 (Alaska 1977); *Salazar v. State,* 562 P.2d 694 (Alaska 1977); *Wolfe v. State,* 553 P.2d 472 (Alaska 1976); *Thurlkill v. State,* 551 P.2d 541 (Alaska 1976); *State v. Trunnel,* 549 P.2d 550 (Alaska 1976); *Keller v. State,* 543 P.2d 1211 (Alaska 1975).