**Nathan Lee BORDEWICK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3341.**

Supreme Court of Alaska.

Sept. 23, 1977.

---

Beverly W. Cutler and Barbara J. Miracle, Asst. Public Defenders, and Brian Shortell, Public Defender, Anchorage, for appellant.

Glen C. Anderson and Monica Jenicek, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR, and BURKE, Justices, and DIMOND, Justice Pro Tem.

## OPINION

DIMOND, Justice Pro Tem.

This is a sentence appeal.

■ Nathan Bordewick entered a plea of nolo contendere to the crimes of rape, sodomy and grand larceny. He received a sentence of imprisonment for twelve years on the rape charge, seven years on the sodomy charge, and five years on the charge of grand larceny. The latter two sentences were to run concurrently with the sentence for rape; and, therefore, his total term of imprisonment was to be twelve years. The judge stated, at the time of sentencing, that he was imposing the twelve-year sentence with the understanding that Bordewick would be eligible for parole after serving one-third of the sentence, i. e., four years.[1] The question presented on this appeal is whether this sentence was excessive.

We have stated that a maximum prison sentence should not be imposed unless the defendant being sentenced fits into a class which we have characterized as "the worst type of offender." The factors we have considered in determining whether a defendant fits into this classification are: "prior criminal convictions, age, military records, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which has been considered to demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public." *State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975).

■ In this case, the maximum sentence prescribed by the legislature for rape— twenty years[2]—was not imposed, as Bordewick's counsel recognizes. She argues, however, that the same factors which are looked to in determining whether a defendant is the worst type of offender should also be considered when determining whether to impose a sentence in excess of that recommended by the American Bar Association. The American Bar Association Standards, Sentencing Alternatives and Procedures § 2.1(d) (Approved Draft 1968) states:

> For most offenses on the other hand the maximum authorized prison term ought not to exceed ten years except in unusual cases and normally should not exceed five years.

Counsel notes correctly that we have approved this American Bar Association recommendation in past decisions. In *Donlun v. State*, 527 P.2d 472, 475 (Alaska 1974), for example, we stated:

> The American Bar Association has stated that in the vast majority of cases prison sentences are significantly higher than are needed to adequately protect the in-

---

1. Whether Bordewick will in fact be paroled after serving four years, or some longer period of imprisonment, is a matter which the courts cannot determine with any degree of certainty. Therefore, we do not consider the possibility of parole when deciding whether a sentence is excessive. *See Huff v. State*, 568 P.2d 1014 (Alaska 1977).

2. AS 11.15.130(c).

terests of the public and that, except for cases involving *particularly* serious offenses, dangerous offenders and professional criminals, maximum prison terms ought not to exceed 5 years. We agree. (Emphasis in original; footnote omitted.)

And we stated in *State v. Trunnel*, 549 P.2d 550, 552 (Alaska 1976):

We reiterate our agreement with the American Bar Association's statement that maximum prison terms ought not to exceed five years except for cases involving particularly serious crimes. (Footnote omitted.)

In considering the "worst type of offender" factors, as applied to Bordewick, counsel points out that Bordewick had no prior criminal record except insignificant juvenile incidents; that he was only 24 at the time of sentencing; that he was honorably discharged from the United States Coast Guard after four months of service; that his employment history, although not stable, showed a preference for self-support and economic independence; that he suffered from the illness or disease of alcoholism; that as to any antisocial behavior, this was defendant's first sexual offense; that he obviously could not be classified as a professional criminal; and that psychiatric evaluations made evident that his crime stemmed from deep-seated psychological problems beyond his control. These problems consist of brain damage diagnosed at age seven or eight; chronic organic brain disease, with resulting learning disabilities; hyperactivity; functional retardation; and experiences with mother figures who abused him, abandoned him and infantilized him.

These facts reveal a tragic and pathetic figure—a person who by age and physical growth has become a man, but whose manhood has been severely impaired by emotional and psychological problems resulting principally from childhood abuse and neglect and from the absence of genuine, healthy parental love and care.

Yet there is another tragedy we cannot overlook: Bordewick, without any provocation at all, brutally and violently raped and committed an act of sodomy upon a 69 year old woman, and while doing this, threatened to kill her with a knife. The physical damage to this unfortunate victim can be ascertained. The psychological damage was undoubtedly substantial and may be much more lasting and painful than the physical injury. Bordewick's acts are among the most serious of crimes, because they amount to:

a desecration of the victim's person which is a vital part of her sanctity and dignity as a human being.[3]

■ As we have stated, we have approved the American Bar Association's recommendation that maximum prison terms generally should not exceed five years.[4] But there is an important exception to this caveat; the five year limitation does not apply in cases involving particularly serious crimes.[5] The crimes of rape and sodomy are certainly "particularly serious," [6] and therefore, we do not depart from the American Bar Association's recommendations and standards relating to sentencing when we affirm a sentence in excess of five years for crimes such as those under consideration here.

■ At the sentencing hearing, the judge considered all the factors we have discussed, and in addition, all of the criteria which we have established in prior decisions to guide sentencing judges in imposing just and meaningful sentences.[7] It was the

3. *Newsom v. State*, 533 P.2d 904, 911 (Alaska 1975).

4. *State v. Trunnel*, 549 P.2d 550, 552 (Alaska 1976).

5. *Id.*

6. *See Newsom v. State*, 533 P.2d 904, 911 (Alaska 1975).

7. In our recent decision in *Huff v. State*, 568 P.2d 1014, at n. 14 (Alaska, September 16, 1977), we stated:

We have stated on numerous occasions that the sentencing goals to be considered by a judge in determining an appropriate sentence for a particular offense include not only rehabilitation of the offender, but in addition, isolation of the offender in order to protect

judge's conclusion, after discussing the goals to be achieved in sentencing, that the goal most relevant to determining a proper sentence for Bordewick was the protection of society. The judge believed that Bordewick was a real danger to society and had to be segregated in order to prevent immediate harm to other women which would be likely to result from his disturbed emotional state and his deep-seated rage against women. The judge concluded that a twelve-year sentence would protect society from this danger.

In considering sentence appeals, the scope of our review authority

> . . . requires that we make our own examination of the record with particular emphasis on the nature of the crime, the defendant's character, and the need for protection of the public. The controlling standard of review in sentence appeal matters is whether the trial court's sentence was 'clearly mistaken.' [8]

We have carefully examined the record. We find that the sentencing judge, in the most thoughtful and conscientious manner, carefully attempted to achieve a fair balance between the welfare of society on the one hand, and the needs and welfare of Bordewick on the other. We cannot say, of course, that a perfect balance was achieved by imposing the somewhat lengthy sentence of twelve years. However, there are too many imponderables involved in attempting to fashion punishment for crimes for anyone to require perfection in this extremely difficult task. Nevertheless, in the light of all the circumstances and the fact that Bordewick had previously been sentenced for three separate felonies, we can say in this

case that the judge was not clearly mistaken in imposing the sentence he did.[9]

However, we would add to the remarks and recommendations of the sentencing judge that we consider it imperative, in light of Bordewick's emotional and mental disorders, that all necessary medical, psychiatric and psychological treatment be made available to him during his period of incarceration and supervised parole.[10] As we stated in *Waters v. State*, 483 P.2d 199, 202 (Alaska 1971):

> We . . . assume that the Division of Corrections and the Parole Board are fully cognizant of these reformative needs and will undertake appropriate measures to bring about appellant's early return to the status of a noncriminal member of our society.

At the end of her memorandum, Bordewick's counsel candidly admits that he is "undoubtedly a danger to society." She then poses this question: "Whether warehousing him in jail for twelve years is the response of an enlightened society to a crime directly attributable to factors set in motion long before defendant was in control is now the question before this Court." We found this to be a difficult question to answer because we did not fully understand the premise upon which it is based, i. e., that the crimes Bordewick committed were "directly attributable to factors set in motion long before defendant was in control. . . ."

■ Our society holds one responsible for antisocial or criminal acts unless he is insane. A person is insane in the legal sense, and not responsible, only if at the time of his antisocial conduct, as a result of mental disease or defect, he lacks substantial ca-

---

the public, deterrence of the offender and of other members of the community who might possess similar criminal tendencies and reaffirmation of societal norms embodying condemnation of the unlawful acts performed by the guilty person.

8. *Huff v. State*, 568 P.2d 1014 (Alaska, September 16, 1977), *quoting Andrews v. State*, 552 P.2d 150, 153 (Alaska 1976) (footnote omitted); *Gilligan v. State*, 560 P.2d 17, 19 (Alaska 1977).

9. We have in the past affirmed sentences ranging from eight to twenty years in forcible rape

cases. *Coleman v. State*, 553 P.2d 40 (Alaska 1976) (10 years); *Ames v. State*, 533 P.2d 246 (Alaska 1975) (8 years); *Newsom v. State*, 533 P.2d 904 (Alaska 1975) (15 years); *Torres v. State*, 521 P.2d 386 (Alaska 1974) (20 years); *Newsom v. State*, 512 P.2d 557 (Alaska 1973) (15 years); *Gordon v. State*, 501 P.2d 772 (Alaska 1972) (10 years).

10. *Waters v. State*, 483 P.2d 199, 202 (Alaska 1971).

pacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.[11]

Counsel for Bordewick cannot mean to argue that Bordewick was insane, because she assisted him in entering a plea of nolo contendere to the crimes for which he was charged.[12] She did not advise him to enter a plea of not guilty by reason of insanity. We must assume from this that despite Bordewick's emotional and mental disorders and problems, he does not contend that his capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was so substantially diminished at the time of the offense that he could not be held accountable under the law for the offenses he committed.

Perhaps what counsel is alluding to is that an enlightened society should adopt what is sometimes called the "humanitarian theory" of punishment. Proponents of that theory espouse the view that to punish one because he deserves it is mere revenge or retribution and, therefore, is barbarous and immoral. Under the humanitarian theory, the only legitimate motives for imprisoning one who commits a crime are the desire to deter others by example and the desire to mend the criminal. When one combines this theory, as frequently happens, with the belief that all crimes generally are more or less pathological, the mending function becomes a healing one, and "punishment" becomes, in effect, therapeutic.[13]

While the topic is a fascinating one, we consider it inappropriate here to enter into a dialogue on the merits of various theories of punishment. Philosophers such as Hegel, Hobbes, Hume, Kant, and John Stuart Mill, as well as members of other disciplines and professions, have debated for centuries the theories on how society should deal with those who flout its laws.[14] The judiciary of this state and that section of the executive branch which administers the penal system (i. e., the Division of Corrections, Department of Health and Social Services), are constrained by the Alaska Constitution to base penal administration "on the principle of reformation and upon the need for protecting the public."[15] We have stated that these principles are the "touchstones of penal administration." *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

These constitutional goals, which we elaborated on in *Chaney*, have been taken into account to a great extent by the judges of this state since our decision in *Chaney* in 1970. They were taken into account here. The sentencing judge saw the necessity, because of Bordewick's dangerous propensities, of segregating him in order to protect society. But, in imposing a sentence of twelve years, the judge's intent was clearly that Bordewick would be eligible for supervised parole after being in prison for one-third of the sentence, or four years. In addition, the judge expressed the hope that there could be rehabilitative supervision of Bordewick, both within and without the penal institution, in order to aid him in the completion of his education and in establishing a trade. Finally, in this opinion, we have emphasized that it is imperative that while in prison and outside of prison under supervised parole, Bordewick be given the obviously necessary medical, psychiatric and psychological treatment and other reformative means to bring about his "early return

11. AS 12.45.083(a).

12. A plea of nolo contendere, like a plea of guilty, is both an admission of guilt and a waiver of all non-jurisdictional defects in a case. *Cooksey v. State*, 524 P.2d 1251, 1255 (Alaska 1974).

13. C.S. Lewis, The Humanitarian Theory of Punishment. This article is found in *Theories of Punishment*, edited by Stanley E. Grupp (Indiana Univ. Press, Bloomington 1971).

14. *See The Philosophy of Punishment* (MacMillan-St. Martins Press, London, 1969), a collection of papers edited by H. B. Acton, Professor of Moral Philosophy, University of Edinburgh.

Psychiatrists, too, have participated in this discussion; *see, e. g., The Crime of Punishment* (Viking Press, New York, 1969), by the eminent psychiatrist and author, Dr. Karl Menninger—and jurists also. *See The Common Law* (Little, Brown and Co., Boston, 1923) at 39–50, by Oliver Wendell Holmes, Jr.

15. Alaska Constitution, art. I, § 12.

to the status of a noncriminal member of our society." [16]  We assume that the Division of Corrections and the Parole Board will be cognizant of these needs and will take the necessary measures to fulfill them.

The sentence is AFFIRMED.

---

16.  *Waters v. State*, 483 P.2d 199, 202 (Alaska 1971).