Thomas F. KELLY, Appellant,

v.

STATE of Alaska, Appellee.

Burr SNYDER, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 4097, 4529.

Supreme Court of Alaska.

Jan. 23, 1981.

Phillip P. Weidner, Drathman, Weidner & Bryson, Anchorage, for appellants.

James V. Gould, Asst. Dist. Atty., Larry R. Weeks, Dist. Atty., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.*

## OPINION

RABINOWITZ, Chief Justice.

This is a consolidated sentence appeal reviewing sentences for drug sales convictions. Kelly appeals a sentence of ten years with five suspended, together with a fine of $4,000, suspended until six months after his release from prison, for sale of cocaine. Kelly appeals both the original sentence given by the superior court and the superior court's failure to grant his motion for reduction of sentence. Snyder was sentenced to five years' imprisonment for sale of marijuana. Snyder appealed to this court errors in his conviction and contended that his sentence was excessive. In *Snyder v. State*, 585 P.2d 229 (Alaska 1978), we affirmed his conviction but remanded for resentencing on the ground that the superior court had improperly emphasized the sentencing goal of community condemnation, in light of the ambivalent community feeling toward marijuana offenses. In a separate concurrence, Justice Matthews, joined by Justice Connor, concluded that the original sentence was excessive. Justice Burke, dissenting, concluded that the sentence was not excessive. Upon remand, the superior court again sentenced Snyder to five years' imprisonment and Snyder has again appealed.

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

In this appeal, both appellants contend that the sentencing theory that the superior court employed is contrary to law, and thus the sentences imposed should be reconsidered; and also that the ultimate sentence given in each case is excessive and should be reversed.

Upon review, we have determined that the superior court failed to consider the nature of the offense as mandated in our prior opinions and acted on incorrect information concerning parole release. Thus, the sentences must be vacated and the matters remanded for resentencing. We have also concluded that the ultimate sentence given in each case is excessive.

The superior court's sentencing in these cases is based on a sentencing theory that is summed up in the following statement from the superior court's Rule 35 decision:

> Under [the Alaska] Constitution, sentencing goals should be purely utilitarian, i. e. the prevention of future crime and not retributive.

A major portion of the superior court's lengthy opinion is spent explicating this conclusion and in demonstrating the results of its application. We are persuaded that the superior court's conclusion is incorrect.

The Alaska Constitution provides that "[p]enal administration shall be based on the principle of reformation and upon the need for protecting the public." Alaska Const. art. I, sec. 12. This court expanded on the meaning of this section of the constitution in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970) (footnotes omitted):

> Under Alaska's Constitution, the principles of reformation and necessity of protecting the public constitute the touchstones of penal administration. Multiple goals are encompassed within these broad constitutional standards. Within the ambit of this constitutional phraseology are found the objectives of rehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct dur-

ing the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.

In *Faulkner v. State*, [445 P.2d 815, 823 (Alaska 1968)] it was said, determination of an appropriate sentence involves the judicious balancing of many and ofttimes competing factors . . . [of which] primacy cannot be ascribed to any particular factor.

The superior court concluded that all of these goals could be subsumed under the goal of crime prevention, except perhaps that of reaffirmation of societal norms. Even this goal, the superior court reasoned, if properly considered, is to be subsumed under prevention:

From the foregoing, it should be clear that if community condemnation and affirmation of community norms is viewed instrumentally (i. e., as a means to an end), as intended to publicize the norm and the sanction, and thereby discourage deviance from it, then affirmation of community norms is synonymous with general deterrence. Alternatively, if the purpose is to express moral disapproval of the defendant and thereby render unto him his desserts without regard to the impact on his or others' future conduct from the sentence, then it is synonymous with retribution.

Given the foregoing, the superior court concluded that the seriousness of the crime should not be considered by the sentencing court either to enhance or to limit the sentence, since this would be based upon the prohibited goal of retribution.

We have previously stated that the goal of community condemnation is distinct from retribution, in *Smothers v. State*, 579 P.2d 1062, 1064 (Alaska 1978) (footnote omitted):

We note that the trial court expressed some uncertainty as to the meaning of the fourth *Chaney* criterion, the reaffirmation of societal norms, questioning whether it actually was a disguise for retribution. The use of retribution as a goal of sentencing is inconsistent with the mandate of art. I, § 12 of the Alaska Constitution that 'Penal administration shall be based on the principle of reformation and upon the need for protecting the public,' and was not adopted as one of the four goals in *State v. Chaney*, 477 P.2d at 444.

The support of community expectations that existing norms will be enforced and delicts will be punished is separate from retribution. The judge's balancing of the factors of rehabilitation, isolation and deterrence must also include an awareness that in sentencing, he is reflecting community beliefs that certain norms are viable and will be upheld by the courts.

Further, as part of both the community condemnation and deterrence goals,[1] we

---

1. In *Whitton v. State*, 479 P.2d 302 (Alaska 1970), *appeal after remand*, 506 P.2d 674 (Alaska 1973), we noted the need for greater deterrence as provided in the statutory scheme for degrees of theft crimes:

In criminal laws of this nature, society is asserting its basic interest in the protection of the person and his property. This interest may vary according to the circumstances in which the person is unlawfully deprived of his property. Such varying degrees of interest are expressed in criminal statutes which prescribe different punishments for what may be considered as one basic offense against a person's property rights, but which, because of the circumstances in which the property is taken from the person, are considered by society to be more or less grave.

.     .     .     .     .

The varying degrees of punishment, depending upon the manner or circumstances in which the act of stealing takes place, reflect society's legitimate interest in the protection of the person. We recognized this in *Miller v. State*, [462 P.2d 421, 426 (Alaska 1969)] where we referred to the necessity of controlling man's destructive and aggressive impulses and of the need of developing rules to inhibit violence. In *Gray v. State*, [463 P.2d 897, 908–10 (Alaska 1970), *appeal after remand*, 487 P.2d 680 (Alaska 1971)] we commented upon the obvious fact that when one

have consistently articulated a concern for the nature of, and harm stemming from, the offense. In *State v. Chaney*, 477 P.2d 441, 443 (Alaska 1970), this court, in quoting with approval the ABA *Standards Relating to Appellate Review of Sentences*, Standard 1.2 (Approved Draft, 1968), noted that the nature of the offense must be considered.[2] Additionally, we have often stated that violent crimes involving physical injury to innocent people are to be regarded as the most serious type of offense.[3] Another example of our focus on the seriousness of the offense is found in the categorization of drug offenses first articulated in *Waters v. State*, 483 P.2d 199 (Alaska 1971);[4] the placing of marijuana crimes in a separate class from all other drug offenses as being least harmful is a reflection of a consideration of the potential effect of the drug upon society. Throughout this court's review of sentences, the degree of physical or psychological violence involved in the offense has been an important factor. Even in property crimes, the degree of harm is important. We have noted in one case the minor nature of a petty theft as a mitigating factor at sentencing.[5]

The revised criminal code effective this year specifically calls for a consideration of the nature of the offense. AS 12.55.005 now provides, in part:

> commits a robbery with a firearm, he has created a situation fraught with peril, with an immediate threat of violence, and because of this is precluded from claiming self-defense to any act of violence that results from such a crime. As the threat of fear and force and violence increases, so must the deterrent to behavior creating this danger to the person, in order that life in society may be tolerable. 479 P.2d at 304–05 (footnotes integrated into text).

2. *See also Hansen v. State*, 582 P.2d 1041, 1046 (Alaska 1978) ("[O]ur inquiry ... must focus on whether the penalty for that felony is out of proportion to the seriousness of the offense.").

3. *See, e. g., Ames v. State*, 533 P.2d 246, 250 n.8 (Alaska), *modified on other grounds*, 537 P.2d 1116 (Alaska 1975); *State v. Armentrout*, 483 P.2d 696 (Alaska 1971).

4. The President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 513 (Avon 1968) recommends that judges take

In imposing sentence, the court shall consider

(1) the seriousness of the defendant's present offense in relation to other offenses;

. . . . .

(4) the circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order;

. . . . .

(6) the effect of the sentence to be imposed as a community condemnation of the criminal act and as a reaffirmation of societal norms.

■ In view of the foregoing we conclude that in attempting to eliminate consideration of the nature of the offense from its consideration of relevant factors at sentencing, the superior court was clearly mistaken and the sentences in the instant case must be reversed.

■ Although the issue was not raised by appellants, we have determined that the superior court also committed plain error[6] in the method of its consideration of the probable parole period as a determinative factor in sentencing Kelly and Snyder.

account of four groups of drug offenders whose crimes are in descending order of seriousness.
1. Smuggling or sale of large quantities of narcotics or possession of large quantities for sale.
2. Smuggling or sale of small quantities of narcotics, or possession of small quantities for sale.
3. Possession of narcotics without intent to sell.
4. Marijuana offenses.
We think these categories are relevant in sentencing of drug offenders.
*Waters v. State*, 483 P.2d 199, 201 (Alaska 1971).

5. *Hansen v. State*, 582 P.2d 1041, 1048 (Alaska 1978).

6. Alaska R.Crim.P. 47(b) provides:
Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

This court, in *Bordewick v. State*, 569 P.2d 184, 185 n.1 (Alaska 1977), stated:

> Whether Bordewick will in fact be paroled after serving four years [of a twelve year sentence], or some longer period of imprisonment, is a matter which the courts cannot determine with any degree of certainty.

In *Huff v. State*, 568 P.2d 1014 (Alaska 1977), *appeal after remand*, 586 P.2d 621 (Alaska 1978), the court had looked at the only study done in Alaska of parole and concluded:

> At the present time a prisoner may become eligible for parole if the presiding judge, at the time of sentencing, designates a minimum period which the prisoner must serve in prison before being eligible for parole which, according to statute, 'shall be at least one-third of the maximum sentence imposed by the court.' But it does not follow from this that there is any certainty that a prisoner, such as Huff, would actually be paroled at that time. As has been recently stated in 'Parole in Alaska,' published in January 1977:
>
> > There is an increasing tendency among judges as well as in editorial comment to consider that those convicted of a crime will be automatically released on parole when one-third of the time is served. Yet, less than one-third of those heard by the parole board in 1976 were actually paroled, and these individuals served almost half their sentence before being released. In addition, the criteria for determining who is paroled seems reasonable. All in all, the parole process in Alaska appears to be effective and not at all lenient.
>
> Thus, the odds based on existing data do not favor Huff's chances of being paroled in 30 months after being sentenced for a total period of eight years. We feel that we cannot rely on the uncertain possibility of parole in determining whether a sentence is excessive.

*Huff v. State*, 568 P.2d at 1019 (footnotes omitted).

In the two cases at bar, the superior court, in comparing these sentences with the three-year sentences it had previously imposed on Wolfe and Hughes, both drug retailers, noted:

> Thus to be consistent with the Wolfe and Hughes sentences, Snyder and Kelly must receive more time; remembering that only 47% of the sentence imposed will be served, it seems that a five year sentence is as appropriate for Snyder and Kelly [who are wholesalers] as a three year sentence was for Hughes and Wolfe.[7]

7.  The superior court had earlier noted:
    > It should be noted that Alaskan convicts serve approximately 47% of their sentence when allowance is made for good time and parole, and this is sufficiently consistent to be considered in imposing sentence. See, Merle Martin's *Parole In Alaska* (January 1977). Thus, a five year sentence will generate 28 months to serve and a three year sentence, 17 months. Given the profits to be anticipated, 17 months is not enough to deter.

    The superior court justified its reliance on this data in a footnote as follows:
    > In the past, the Supreme Court disapproved of reliance on Parole in Sentencing because nothing was known about it, since that time Merle Martin did the study for the Court System mentioned in the text establishing that *almost all convicts are released after serving 47%* of their terms. Actually by mixing violent criminals with non-violent, Martin probably exaggerates the time the latter will serve. Both Wolfe and Hughes were released after serving a little over one year, approximately one-third of their sentences. Given the good record Kelly has (and I believe Snyder will have) in prison, they will probably serve a little over twenty months; of course this is not certain, but it is more certain than most of the factors we rely upon in predicting the future. [emphasis added]

    This summary is incorrect. In the year covered by Martin's study, only 30.6% of those reviewed were paroled. M. Martin, Parole in Alaska 1 (1977). The study noted that, since it only looked at a single year's data, it had no way of determining what percentage of prisoners are paroled over their term of incarceration. *Id.* at 1 n.1. Parole is granted on an individual basis and most often dependent on the parole board's assessment of the individual's actions while incarcerated. No set of statistics will accurately reflect at what point an individual will be paroled. Further, not all parole releases are successful. Upon commission of parole violations, the parolee may well be reincarcer-

Our recent opinion in *Jackson v. State*, 616 P.2d 23, 24–25 (Alaska 1980), is determinative of this facet of the sentence appeal in the cases at bar. There we said:

We do not suggest that parole considerations are irrelevant in fashioning a sentence. However, the assumption that an offender will be paroled on a particular date is, at best, speculative. If a sentence were adjusted to reflect such an assumption, but the offender not released as 'scheduled,' the full service of a clearly excessive sentence might result.

We believe the correct approach is for the sentencing judge to impose an appropriate term of incarceration, considering the *Chaney* criteria, on the assumption that the entire term may be served. The court may then, in its discretion, designate a parole eligibility period greater than the statutory minimum, and should articulate on the record its reasons for doing so. [footnotes omitted]

Thus, we conclude that the superior court erred in its consideration of parole in the instant cases.

Improper application of the *Chaney* criteria and reliance on inappropriate parole considerations require that these cases be remanded to the superior court for resentencing. However, as to Snyder, he has already suffered significant delay since this is the second time his sentence has come before this court for review. For that reason, and to offer guidance to the superior court, we shall also consider whether the sentences in these cases are excessive. In our previous decision in this case, we noted the following facts relevant to Snyder's sentence:

Snyder was sentenced to five years imprisonment. He was 25 years old and had no prior criminal record other than traffic offenses. The trial court evaluated the case according to the standards outlined in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970). The court found that there was no need for assistance in education, vocational training or psychiatric or psychological problems and that Snyder did not require rehabilitation for such purposes. With reference to the goals of deterrence of the defendant and others, the court noted the substantial financial motive for the crime. We note that we are not here dealing with a case where an informer inveigles an individual to secure a small quantity of a drug for sale to the informer at little or no profit. This was a major financial venture involving a total investment of $22,000.00, $6,000.00 of which was from Snyder, according to the probation report. With large profits to be anticipated, a substantial penalty may reasonably be necessary to serve as a deterrent.

The trial court found that there was a substantial likelihood that Snyder would repeat the offense if only given probation.

*Snyder v. State*, 585 P.2d 229, 233–34 (Alaska 1978) (footnote omitted). In that opinion, the majority did not directly consider the issue of excessiveness.[8] No additional relevant facts of controlling importance were produced at resentencing. The superior court noted that it considered Snyder and Kelly the worst type of offenders and "professional criminals."

---

ated for the remainder of his term. We conclude that it is error for the superior court to fix the total sentence of incarceration based upon the court's estimate as to what portion the defendant will actually serve and what portion will be spent on parole.

8. *Snyder v. State*, 585 P.2d at 234. In a concurrence, Justice Matthews, joined by Justice Connor, concluded that five years was excessive for this first conviction noting:

Since marijuana offenses are at the bottom of the drug crime scale [*Waters* scale], a five year sentence for a first offender cannot be

justified. Sustaining this sentence would be a denial of the principle that the sentence should fit the crime.

585 P.2d at 235 (footnote omitted). Justice Burke, dissenting, noted that he believed the sentence was not excessive as concluded by two of his colleagues.

This view, I believe, ignores both the magnitude and commercial nature of the transaction, as well as the extent of the sentence authorized by the legislature.

585 P.2d at 235 n.1.

Snyder appeals his re-sentence of five years' imprisonment as excessive, arguing that it is disproportionate to the nature of the offense; that it ignores the goal of rehabilitation; and that he is not the worst type of offender or a professional criminal.

Synder's offense, sales of marijuana, falls into the lowest of the four groupings of drug offenses set forth in *Waters*.[9] Snyder was involved with sales of marijuana at what may be described as a wholesale level, involving substantial quantities and potentially high profits. However, Snyder had only recently turned to this activity. He is a youthful first offender, and the harsher levels of punishment appropriate for the worst type of offender are not called for in this case.

█ In focusing on the offender, we have generally characterized the worst offender as a hardened criminal. A history of several prior felony convictions is sufficient and most commonly used to warrant this characterization,[10] though a number of factors are to be considered in this determination:

> Some of the factors which this court has looked to in order to support such a characterization—and the imposition of a maximum term—have been prior criminal convictions, age, military records, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which has been considered to demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public.

*State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975). We cannot conclude that Snyder is a worst offender.

█ In *Strachan v. State*, 615 P.2d 611, 613 n.7 (Alaska 1980), we defined "professional criminal" as one who uses criminal activities as a primary source of support. Both Snyder and Kelly seem to come within this definition of "professional criminals,"

as they were largely motivated by the substantial profits to be gained from this form of illegal activity. However, we find that in both cases the seeming "professionalism" of their criminal endeavor is offset by their age, the relatively short term of their criminal activity, and their lack of prior contact with the criminal justice system. To call such youthful first offenders "professional" criminals overstates the case. In regard to Snyder, there are strong indicia that he is amendable to rehabilitation.[11] We hold that Snyder's sentence of five years is excessive. Upon resentencing Snyder's sentence should not exceed three years' imprisonment.

Thomas Kelly was sentenced to ten years with five suspended and a fine of $4,000 for the offenses of sale of cocaine and possession of cocaine for sale. Kelly was twenty-five at sentencing.

His background can be summarized as follows: Kelly had a seemingly normal childhood and after graduating from high school did various odd jobs, although he eventually got into the carpenters' union. At the time of the offense he had been out of work. Kelly had one juvenile adjudication for being a minor in possession of alcohol. His adult record consisted of six minor traffic charges and one conviction for possession of drugs, which resulted in a five-day jail term and a $50 fine.

Two months prior to his arrest, Kelly began selling cocaine. He later explained that he was out of work and unable to meet his financial obligations and decided to seize the opportunity to make some money. He reportedly made ten retail sales of a gram and several larger sales. The scheduled buy set up by the undercover agent of a pound of cocaine in this case was apparently larger than the previous sales consummated by Kelly. The specific instances resulting in conviction were an initial sale of two ounces

---

**9.** *See* note 4 *supra.*

**10.** *State v. Wortham*, 537 P.2d 1117, 1120–21 (Alaska 1975).

**11.** As of 1979, Snyder had married, settled down in a home and been gainfully employed for a substantial period of time, working first in a spring shop and then as a plumber's assistant.

of cocaine and confiscation of two bags totaling fifty-two grams of cocaine.[12]

Kelly's claim of excessiveness is very similar to that made by Snyder. The basic allegations are that the sentence is disproportionate to the nature of the offense, that it ignores the goal of rehabilitation, and that Kelly is not the worst type of offender or a professional criminal.

We agree and find that Kelly also is not the "worst offender," nor is he a professional criminal. Again, we are confronted with a youthful first offender who does show that he is receptive to rehabilitation.[13]

Although this court in viewing the literature on cocaine has found that it seems to be less harmful than certain other drugs, *State v. Erickson*, 574 P.2d 1 (Alaska 1978), it is not separated out on the *Waters* scale for special treatment, as is the case for marijuana offenses. Thus, penalties substantially greater than those for marijuana sales have been upheld.[14] However, we find the sentence of ten years with five suspended to be clearly mistaken. Upon resentencing Kelly's sentence should not exceed five years with two years suspended. We do not find the fine to be excessive, in light of the large amount involved in this case and the large profits the superior court found Kelly was probably making in his dealing.[15]

The sentences in these cases are reversed and the cases remanded for sentences in accord with this opinion.

---

12. Kelly's offense is aggravated by a high speed chase through residential areas which occurred prior to his arrest.

13. Kelly had good recommendations from institutional supervisors and support from the carpenters' union.

14. *See Robinson v. State*, 593 P.2d 621 (Alaska 1979) (5 years for cocaine and heroin sales); *Elliot v. State*, 590 P.2d 881 (Alaska 1979) (3 years for sale of small quantities of cocaine); *Johnson v. State*, 577 P.2d 230 (Alaska 1978) (6 years for sales of small quantities of cocaine); *Waters v. State*, 483 P.2d 199 (Alaska 1971) (10 years for cocaine sales).

15. The state used $4,000 in the drug transaction in which it caught Kelly; only $400 of that was recovered.