James MATTERN, Appellant,

v.

STATE of Alaska, Appellee.

No. 1409.

Supreme Court of Alaska.

Aug. 4, 1972.

Bruce A. Bookman, Asst. Public Defender, Anchorage, Barry J. Rovins, Asst. Public Defender, Ketchikan, Herbert Soll, Public Defender, Anchorage, for appellant.

W. H. Hawley, Dist. Atty., Ketchikan, John E. Havelock, Atty. Gen., Juneau, for appellee.

Before BONEY, C. J., RABINOWITZ, CONNOR, and ERWIN, JJ.

## OPINION

CONNOR, Justice.

On appeal from a conviction of burglary, appellant contests the validity of a search and seizure which produced items admitted in evidence in his trial. He also appeals from the sentence imposed.

On May 3, 1970, in Ketchikan, Alaska, Mrs. Merrell was awakened in the middle of the night by the sounds of drawers or closets slamming in the apartment below. Mrs. Merrell was startled because she knew that Carol Krebs, the occupant of the lower apartment, was away on vacation. She called the police, told them that there was someone in the apartment below hers, that the occupant was away, and asked for assistance. After calling the police, Mrs. Merrell did not hear any more sounds. She walked to the front windows of her apartment overlooking the street and saw a vehicle she had never seen before parked across the street. The car, which she identified as a white Dodge van, began to move slowly northward down the street with no lights on. Mrs. Merrell again called the police, describing the van, its direction, and the fact that the lights were turned off.

Officers Friedricks and Preshaw of the Ketchikan City Police Department were on routine vehicle patrol when they received a radio call around 4:00 a. m. from the police dispatcher that there was a burglary in progress on Second Avenue. As they were proceeding towards the address, they received a second call from the dispatcher that a white Dodge van was leaving the burglary premises with its lights off. A few minutes later the two officers spotted appellant's vehicle, a white Dodge van, without any lights on, northbound on Second Avenue. They stopped the van, and Sergeant Edwardson, also of the Ketchikan City Police, arrived on the scene and began questioning the appellant.

Officer Preshaw's movements during the interrogation are unclear. According to the three policemen, Preshaw went to the driver's side of the van and, either standing in the street or on the van's running board, shone his light into the back of the van where he saw what appeared to be a woman's black slip and a blond wig. In an

affidavit supporting appellant's motion to suppress evidence and during legal argument on that motion, appellant's counsel stated that the slip and wig had not been in the plain view of the officer but that on the contrary, while Mattern was being questioned by two of the policemen, the third entered the van to conduct a general search of the interior, finding the slip and wig.

Leaving Mattern with the two officers, Sergeant Edwardson went to the scene of the burglary. Mrs. Merrell let the sergeant into Carol Krebs' apartment with a key her friend had given her. There Sergeant Edwardson found some evidence of illegal entry and Mrs. Merrell told him that a blond wig and some lingerie were missing from the apartment. The sergeant then contacted his men and asked them to bring the wig and slip to the apartment. In addition to the wig and slip, the officers found a housecoat, a yellow brassiere and an empty purse inside the van. All these items were identified as belonging to Carol Krebs.

Before trial appellant requested an evidentiary hearing on his motion to suppress the items found in the van. The court denied the motion to suppress without granting an evidentiary hearing. Appellant was convicted of burglary in a dwelling and sentenced to 18 months' imprisonment.

From this conviction and sentence Mattern raises four points on appeal: failure to hold an evidentiary hearing on his motion to suppress, an illegal search, an illegal arrest, and an excessive sentence.

## FAILURE TO HOLD AN EVIDENTIARY HEARING

Appellant urges that the court committed error in denying him an evidentiary hearing on his motion to suppress when factual issues were raised by his moving papers and the conflicting affidavits of the parties.

Mattern and the state had opposing versions of the discovery of the women's apparel in the van. Appellant claimed that the items were the product of an illegal entry and search of his van conducted by one of the police officers immediately after he was stopped and while he was being questioned by the two other officers. The state opposed the motion to suppress, asserting that the items were in the plain view of the officers through the windows of the van.[1]

Appellant's counsel several times requested an evidentiary hearing on his motion to suppress. After considering the affidavits of the appellant and Sergeant Edwardson and hearing argument by counsel, the judge denied appellant's request for an evidentiary hearing. The judge stated that a full hearing was unnecessary since he believed the officer's affidavit that the evidence was in plain view through the windows of the van.

Under Alaska law on a motion to suppress evidence, "[t]he judge or magistrate shall receive evidence on any issue of fact necessary to the decision of the motion."[2] The federal courts have interpreted the above clause[3] to require an evidentiary hearing when a petition alleges facts

---

1. It is well settled that there is no search when a policeman observes objects which fall within his plain view. Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Klockenbrink v. State, 472 P.2d 958, 961 (Alaska 1970); Weltz v. State, 431 P.2d 502, 505 (Alaska 1967); Brown v. State, 372 P.2d 785, 790 (Alaska 1962). Under the plain view rationale courts have almost universally found that

"[l]ooking into a parked car through the windows does not constitute a search, even though it is nighttime and the items can be seen only with the aid of a flashlight."

State v. McMillin, 206 Kan. 3, 476 P.2d 612, 616 (1970). *See also* People v. Exum, 382 Ill. 204, 47 N.E.2d 56 (1943).

2. Alaska R.Crim.P. 37(c).

3. Alaska R.Crim.P. 37(c) is identical to Fed.R.Crim.P. 41(e).

which, if proved, would require the granting of the motion to suppress.[4]

■ The trial court should not have refused to hold an evidentiary hearing on the ground that he believed the police officer's affidavit to the exclusion of that of the defendant.[5] Under Criminal Rule 37(c) if the state and the defendant have opposing versions of the facts and the defendant's version is supportive of his allegation of an illegal search, then an evidentiary hearing must be held. The court's error in this case is harmless, however, since we have determined that even under appellant's fact description, the search was valid.

■ Appellant alleged that the police could not see the evidence through the van's windows; rather, they only discovered the evidence after one of the policemen entered the van. We view the officer's action in entering the van as legitimate because of the potential danger to the police officers from possible accomplices hiding within the van.[6] Ordinarily when police stop a vehicle it is sufficient for their protection that they merely look through the windows in order to determine if anyone is inside. When that is the case, it would be clearly illegal if the police went further and opened the doors of the vehicle. Since they can ensure their safety by looking through the windows, any further intrusion into the vehicle's interior could only be for the purpose of conducting an illegal search. Here the structure of the van was such that, according to the appellant, the police did not have a clear view of its interior. The police were investigating a serious felony and their information concerning the crime did not preclude the possibility of accomplices. They, therefore, had the right to ensure their own safety by briefly stepping into the van for the limited purpose of seeing that it was unoccupied.[7]

## LEGALITY OF SEARCH

Mattern's second contention of error is that even under the state's version of the discovery of the women's apparel in the van, the search was illegal. According to Mattern the police officers stated that they could only see the evidence through the van's window when they stood on the run-

---

4. Cohen v. United States, 378 F.2d 751, 760–761 (9th Cir. 1967); Battle v. United States, 120 U.S.App.D.C. 221, 345 F.2d 438, 440 (1965); Hoffritz v. United States, 240 F.2d 109, 112 (9th Cir. 1956).

5. The state conceded error in the trial court's failure to hold an evidentiary hearing on appellant's motion to suppress and recommended that this court remand the case for a suppression hearing. In this jurisdiction, however, a confession of error does not relieve the court of its appellate function. Marks v. State, 496 P.2d 66, 67 (Alaska 1972).

6. In Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 298–299, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967) the court stated

"The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the

house for persons and weapons could have insured that Hayden [the arrestee] was the only man present and that the police had control of all weapons which could be used against them or to effect an escape."

7. This exception to the search warrant requirement like all such exceptions is strictly limited to the exigency which allows it—the protection of the arresting officers. Chimel v. California, 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Therefore, it would not be permissible for the police to search a van if they had no reasonable cause to fear that their lives were in danger: for example, if the arrest were for a minor traffic violation or if the police had no reason to fear that an accomplice could be hidden in the van. Nor may the police legitimately search areas where a man could not hide: the glove compartment, under the seats, etc.

ning board.[8] Appellant claims that the evidence was not in the officers' plain view since they had to use the running board in order to see into the interior of the van. Therefore appellant argues that the evidence was the product of an illegal search. As we have already stated, a police officer may take necessary precautions to ensure his safety when he stops a vehicle to make an arrest for a serious offense. If it were necessary for the officers to stand on the van's running board in order to view the interior of the van, it would be a legitimate action of the police to protect themselves against possible accomplices.

## LEGALITY OF SEIZURE

Appellant next claims that the evidence in the van was illegally seized, as it was the product of an illegal arrest. For the sake of argument, the appellant assumes that the women's apparel was in the officer's plain view when they first stopped the van. He states, however, that his arrest at the scene of the stop was illegal since it was not based upon probable cause. This illegal detention, according to the appellant, gave the police the opportunity to seize the evidence in the van when they later discovered that items of women's clothing were missing from Carol Krebs' apartment.

■ Appellant is correct in his assertion that the discovery of women's clothing in the van did not add to the policemen's indicia of probable cause to make an arrest. A few used items of women's clothing are hardly the fruits of the ordinary burglary. The police officers themselves admitted at trial that they did not consider the clothing important when they first saw it. We feel, however, that other factors present in the case were sufficient to give the police probable cause to arrest the appellant before they discovered that articles of women's clothing were missing from the apartment.

■ Probable cause to arrest exists when "the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed" and that the defendant committed it.[9] Probable cause is not determined by any mathematical formula, but by the factual context of the particular case.[10] It has been said that "'[t]he substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.'"[11]

The state asserts that the probable cause to arrest Mattern was based upon the two police radio broadcasts indicating a burglary, the fact that Mattern's van was seen leaving the area of the reported burglary without headlights, and the fact that appellant, who claimed to be driving home, drove past his home.

■ The police dispatcher told the arresting officers that a burglary was in progress and then reported that the burglar was leaving the scene in a white Dodge van without lights. Information relayed to a police officer via the police radio may provide probable cause to arrest.[12] How-

8. Officer Preshaw indicated that he used the van's running board to view the interior of the vehicle. However, Sergeant Edwardson not only did not have to use a running board to aid his view of the van's interior, he testified that the van did not have a running board.

9. Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925) ; see also Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959) ; Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) ; Goss v. State, 390 P.2d 220, 223–224 (Alaska), cert. denied, 379 U.S. 859, 85 S.Ct. 118, 13 L.Ed.2d 62 (1964).

10. Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) ; Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305, 308 (1967).

11. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

12. Whiteley v. Wyoming Warden of State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) ; State v. Ward, 457 S.W.2d 701, 706 (Mo.1970).

ever, when one officer furnishes evidence to another officer which leads to an arrest, the state must prove the reasonable basis of the former officer's information.[13] The radio dispatch was based upon Mrs. Merrell's call to the police that she heard noises in her friend's empty apartment below. She also reported an unfamiliar vehicle leaving the area without lights.

In a large city Mrs. Merrell's report to the police and Mattern's furtive manner in leaving the scene would not perhaps be particularly evocative of a belief that a burglary had been committed. In a large urban area neighbors are often anonymous. Ketchikan, however, is a relatively small community where people are likely to know their neighbors and are interested and aware of their movements. An unfamiliar car in a larger city might not arouse suspicion but it will be noticed in a smaller community. Thus we feel that Mrs. Merrell's report to the police that someone was illegally in her neighbor's empty apartment and the subsequent strange behavior of the defendant in driving his car away from this apartment in the middle of the night, without benefit of headlights and passing by his own street, although he told the police he was going home, are sufficient in this case to give the police probable cause to believe that Mattern had committed a burglary [14] in Carol Krebs' apartment.[15]

## THE SENTENCE APPEAL

At the time of the burglary Mattern was 26 years old, unmarried, and employed as a general maintenance man with the school district in Ketchikan. Despite the burglary conviction, several reputable persons connected with the school district in administrative and teaching capacities came forward at the sentencing hearing to testify to Mattern's good character, his open and friendly manner, his dependability and good work habits.

Mattern was born in Longview, Texas, the oldest of five children. He completed 11 years of school and has received his G.E.D. He left high school in 1961 to enter the Navy, receiving an honorable discharge in 1965. After reenlisting, however, he was convicted and sentenced to a year's confinement for wilful disobedience of a superior officer when he refused to serve in Viet Nam. He also received a bad conduct discharge. This is his only previous conviction. The action seems to have been prompted by strong, personal, pacifist convictions.

Mattern told the probation officer that he did not intend to commit a burglary in Miss Krebs' apartment. It was late at night, he had been drinking and was under some unexplained emotional stress. He claims to only partially recall what occurred that night. He does not remember

13. Remers v. Superior Court, 2 Cal.3d 659, 87 Cal.Rptr. 202, 470 P.2d 11, 15 (1970).

14. AS 11.20.080 reads in part
    "A person who breaks and enters a dwelling house with intent to commit a crime in it, or having entered with that intent, breaks a dwelling house . . . is guilty of burglary . . . ."

15. Our brother Erwin in his concurring opinion concludes that the police action in this case was legitimate under the stop and frisk doctrine enunciated by the Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We do not feel that this case is a proper vehicle for discussion of the stop and frisk question. There is language in our opinion in Goss v. State, 390 P.2d 220

(Alaska 1964), which approves of the stop and frisk practice. However, we note that, unlike many jurisdictions which allow this practice, Alaska does not have a statute authorizing the police to forcibly stop a citizen on less than probable cause to arrest. It should also be noted that several members of the United States Supreme Court have begun to reevaluate the Terry opinion. In a recent opinion Justice Brennan expressed the same concern of Judge Friendly that, unless it is held in check, there is a danger that "Terry will have opened the sluicegates for serious and unintended erosion of the protection of the Fourth Amendment." Adams v. Williams, 407 U.S. 143, 153, 92 S.Ct. 1921, 1927, 32 L.Ed.2d 612 (1972) (dissenting opinion).

how he got into the apartment, nor does he remember taking the clothing. His first coherent memory of the event was when he found himself in the van outside of the apartment clasping items of women's apparel.

The probation officer described the incident as follows in his presentence report:

"In regards to this particular offense, it is evident that Mr. Mattern experiences a split from reality, in that during the actual time of the crime, he was experiencing a state of fantasy and that he entered this woman's apartment with the sole purpose of seeking some type of psychological or physical re-enforcement and did not in the truest sense intend to commit a criminal offense."

The probation officer recommended that because of the possibility that Mattern would commit the offense again, and in view of his many psychological problems, that Mattern be incarcerated for 18 months and that he receive any early parole. The state recommended a five-year sentence, indicating that Mattern's army conviction and his present offense proved that the defendant was not willing to live by the laws of society.

The appellant's counsel asked that the court place Mattern on probation requiring visits to a psychiatrist. Counsel stated that Mattern had acted in this incident on the spur of the moment, that he was not a criminal type and was in need of psychiatric help. Counsel indicated that Mattern had an excellent work record, and that his associates in the community were all very reputable people. He emphasized that an excellent plan for Mattern's rehabilitation was available in the community. Clarke Cochrane, director of the rehabilitation house in Ketchikan, stated that if Mattern were placed on probation he could secure immediate employment through the rehabilitation house project. Dr. Mertz, the examining psychiatrist in the case, advised that Mattern was a good risk for proba-

tion. She said that Mattern was suffering from a hysterical neurosis and if placed on probation would benefit from treatment at the Gateway Mental Health Center.

In imposing the 18-month sentence, the court stated:

"The reasons for the sentence, the court feels that at the present time you're a danger to yourself, you're unable to conform to the laws of society. I agree with the psychiatrist that you need some psychiatric treatment. I note that about the—near the same time 5/3/70 the burglar entered dwelling, 6/27/70 contributing to the delinquency of a minor, so it looks like you've been going through a phase which may continue unless you're institutionalized and that's the reason for the court's belief that you should be institutionalized. . . . Well, this is a very serious offense when you break into someone's house or apartment and the law so considers it."

■ We find the 18-month sentence too severe on the facts of this case. The court's asserted reasons for the sentence are not supported by the record. In addition, we feel that probation and not penal incarceration is particularly appropriate in light of the circumstances of the offense and the mental state of the defendant.

The court based the sentence on three factors: that the defendant was going through a criminal phase, that the defendant was a danger to himself, and that he was unable to conform to the laws of society.

■ The court based its finding that defendant was going through a criminal phase, necessitating his incarceration, upon his belief that the defendant committed the offense of contributing to the delinquency of a minor shortly after the burglary. In fact the judge said that the sentences in both offenses would run concurrently. However, the defendant was never tried on the contributing to the delinquency of a minor charge, and the case was dismissed

for lack of prosecution.[16] We have stated many times that a court should not place undue weight on a defendant's prior police contacts during the sentencing process.[17] Here the court based part, if not all, of its findings—that the defendant was going through a criminal phase and that he was unable to conform to the laws of society— upon a charge which was dismissed after the sentencing hearing. This fact alone would require remand for a new sentencing hearing.

The court's finding that appellant was a danger to himself is also not supported by the record. Dr. Mertz, the examining psychiatrist, specifically concluded that Mattern was neither dangerous to himself nor to others. Since Mattern did not testify at the trial or the sentencing hearing, the court's own observations of Mattern would be of slight value.

Finally, the last finding, that Mattern cannot conform to the laws of society is not altogether borne out by the record. Mattern was convicted of burglary, a serious offense. However, he had no prior criminal convictions. Until this particular incident he had conducted his life in a normal and respectable manner. He had steady employment and was a hard worker. His associates were reputable people. The present offense was not itself the product of the typical criminal intent. The probation officer stated that Mattern "did not in the truest sense intend to commit a criminal offense."[18]

It is apparent that Mattern is a man with a good record in his community who has infringed the laws of that community, not through an ordinary criminal predilection but through some psychological difficulty. We conclude, therefore, that incarceration in a penal institution would not only be inappropriate in Mattern's case but might even aggravate his present difficulties, making the eventual reintegration of the defendant into the community more difficult. The twin goals of penal administration in Alaska, reformation of the offender and the need to protect the public,[19] will be best met in this case if Mattern is placed upon probation which includes a regular program of psychiatric treatment.

We affirm the conviction, but reverse and alter the sentence to provide for a sentence of 18 months, with the defendant to be placed on probation for a period to be determined by the trial court, with the condition that the defendant submit to a regular program of psychiatric treatment to be approved by the court.

BOOCHEVER, J., not participating.

ERWIN, Justice (concurring).

I concur in the result reached in this case because I believe that the police conduct amounted to a legitimate "stop and frisk." Even though there was no probable cause to make an arrest at the time the initial stop took place,[1] the police properly stopped an obviously suspicious individual

---

16. Appellant's counsel pointed out to the court that the contributing to the delinquency of a minor charge was a pending charge and not a conviction; however the court did not modify the sentence.

17. Griggs v. State, 494 P.2d 795 (Alaska 1972); Robinson v. State, 492 P.2d 106, 107 (Alaska 1971); Peterson v. State, 487 P.2d 682, 683 n. 1 (Alaska 1971); Robinson v. State, 484 P.2d 686, 690 n. 11 (Alaska 1971); Waters v. State, 483 P.2d 199, 202–203 (Alaska 1971).

18. The items which were taken from the apartment were not the typical fruits of a burglary. Although Carol Krebs had

valuables in her apartment, such as jewelry, a television set, and a stereo, the only items taken were valueless articles of women's apparel: a wig, slip, housecoat, brassiere, an empty purse, and a tampax.

19. Art. I § 12, of the Alaska Constitution reads in part:
   "Penal administration shall be based on the principle of reformation and upon the need for protecting the public."
   See State v. Chaney, 477 P.2d 441, 444 (Alaska 1970).

1. See dissenting opinion of Rabinowitz, J., infra.

to determine his identity and to investigate his possible criminal behavior. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 206 L.Ed.2d 889 (1968), Goss v. State, 90 P.2d 220 (Alaska 1963), Maze v. State, 425 P.2d 235, 238 (Alaska 1967).

In *Adams,* the Supreme Court of the United States described the stop and frisk doctrine in the following language:

> "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." 392 U.S., at 22, 88 S.Ct. 1868. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.,* at 23, 88 S.Ct. at 1881 [1868.] A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

Adams v. United States, 407 U.S. 143, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) [2] In the case at bar, the police received two phone calls describing a burglary in process and the burglar's subsequent departure in an unlighted van. The officers then observed the van driving without lights as described in the phone call. In a small Community like Ketchikan, under our holdings in *Goss* and *Maze,* supra, a prudent policeman could then legitimately detain the driver to investigate further. After stopping the van, it was proper for the officers to look inside for accomplices and to pat down appellant for weapons to protect themselves while they sought a reasonable explanation of the suspect's conduct.

When the temporary detention of appellant resulted in confirmation that a burglary had been committed and that the women's undergarments seen in the van and the tampax found in the appellant's pocket were probable fruits of the burglary, the officers had probable cause to arrest appellant and seize those items. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Under these peculiar circumstances, I agree that the absence of a suppression hearing was harmless error because even under appellant's version of the facts, the police conduct was proper.

RABINOWITZ, Justice (concurring in part, dissenting in part).

I cannot agree that the trial court's error in refusing to hold an evidentiary hearing in regard to Mattern's suppression motion was harmless error. According to Mattern's supportive documents, the police

---

2. In *Adams,* three dissenting justices protested strongly that the majority opinion was an unwarranted extension of *Terry* and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), which seriously eroded the protection afforded persons by the fourth amendment. The dissenters argued that in contrast to Terry, where the officer's reasonable suspicion was based on his own personal observation of the suspects, the officer in *Adams* acted on the uncorroborated tip of an unnamed informant that the defendant possessed narcotic and a weapon. In addition, the dissenters were persuaded by Judge Friendly's argument that if *Terry* were extended to possessory offenses, "[t]here is too much danger that, instead of the stop being the object and the protective frisk an incident thereto, the reverse will be true." Williams v. Adams, 436 F.2d 30, 38–39 (2nd Cir. 1970). In the case at bar, the crime being investigated was burglary, not possession of contraband. Moreover, the informant's tip was corroborated when the officers observed the white van with its lights extinguished. The stop and frisk is therefore sustainable under *Terry,* and it is unnecessary for me to reach the question whether, as a matter of Alaska law, stop and frisk doctrine is properly extendable to *Adams*-type situations.

"made a cursory search of the vehicle from the outside by shining a flashlight beam therein." Other than the mention of a jug of whiskey, nothing was observed as a result of the outside search by the officers. Mattern further asserts that, without his permission, one of the officers, "opened the front door (right side) of said truck; climbed in and searched it with the aid of a flashlight; and thereupon found and seized the property which is the subject matter of the motion to suppress." The prosecution, in its opposition to the motion to suppress, filed the affidavit of Ketchikan Police Sergeant Roy Edwardson. The only relevant portion of this affidavit reads, " . . . I observed through the side window, women's garments and what appeared to be a wig in the defendant's vehicle.[1]

Criminal Rule 37(c) (5) requires that, "The judge . . . shall receive evidence on any issue of fact necessary to the decision of the motion." Since Mattern's motion asserted facts which would require suppression and the prosecution's opposi-

tion controverted Mattern's assertions, an evidentiary hearing was required. Thus, I am of the view that the case should be remanded to the superior court for the purpose ˅of holding an evidentiary hearing. This evidentiary hearing should be conducted by a superior court judge other than the trial judge in this case. Reassignment is necessary because the trial judge previously determined credibility issues, solely from affidavits, against Mattern.[2]

I find the court's conclusion that "even under Mattern's fact description the search was valid" is not warranted by the record. One of the rationales offered for the court's harmless error conclusion is that the officers' entrance into the van was lawful because he feared that his life was endangered by accomplices possibly hiding within the van.[3] A reading of Sergeant Edwardson's affidavit fails to disclose a basis for the conclusion that any of the officers had reasonable grounds to fear physical danger from the accomplices possibly hidden inside the van.[4] Significantly, a

1. Sergeant Edwardson's affidavit reads in part as follows:
   1. That I am a Sergeant on the Ketchikan Police Department.
   2. That I arrived at the scene of the alleged burglary at approximately 4:15 a. m. on the date in question.
   3. That I instructed the officers under my charge to advise the defendant of his constitutional rights immediately after he was apprehended.
   4. That I observed, through the side window, women's garments and what appeared to be a wig in the defendant's vehicle.
   5. That I was aware the vehicle being operated by the defendant was the property of the Ketchikan School District.
   6. That I advised the officers under my charge to take the subject into custody. The subject was under arrest at that time and would not have been allowed to leave.

2. The trial judge, in denying Mattern's suppression motion, stated in part:
   Well, let me say that I believe the statement of the sergeant under oath where he said that I observed through the side window women's garments and what appeared to be a wig in the de-

fendant's vehicle. I believe that there's credence in this testimony. . . .
   The motion to suppress is denied.
After the state had presented its case-in-chief, Mattern's trial counsel renewed his motion to suppress. I do not view this renewal as a waiver of any objections Mattern had to the trial court's failure to conduct an evidentiary hearing. At no time was Mattern afforded the opportunity of testifying as to his version of the events which took place after his vehicle was stopped.

3. The court's reasoning appears somewhat inconsistent. It escapes me how one can say that the trial court erred in failing to hold an evidentiary hearing, and in the same breath conclude that Mattern's moving documents show no basis for the granting of a suppression hearing, after stating that an evidentiary hearing must be held when the movant alleges facts that, if proved, would require granting the motion.

4. Review of the testimony at trial yields a similar result. There simply is no indication that the officers had a reasonable basis to fear violence from the hands of any hidden accomplice of Mattern.

pat down of Mattern disclosed that he was armed with two Tampax pads. The majority also asserts that entry into the van to protect against hidden accomplices was required because "the structure of the van was such that, according to the appellant, the police did not have a clear view of its interior." This statement is not borne out by the record. My reading of the relevant portions of the record shows that the police were amply protected from the threat of potential accomplices, by looking through the side windows of this particular vehicle. From these vantage points, they had unobstructed views of the floorboard to the rear of the vehicle. No evidence indicates a reasonable basis for the officers' fear of physical danger. Nor does the evidence show that they could not have seen an accomplice hidden in the interior of the vehicle by looking through its side windows. Therefore, I cannot agree that the superior court's ruling refusing to grant Mattern an evidentiary hearing was harmless error.[5] I concur in the court's disposition of the sentence appeal aspect of this case.

---

5. I do not believe that Justice Erwin's characterization of the police conduct in question here as a stop and frisk, rather than an arrest, is of assistance in analyzing the search and seizure issue presented in the case at bar.