Robert C. HANSEN, Appellant,

v.

STATE of Alaska, Appellee.

No. 3412.

Supreme Court of Alaska.

Aug. 11, 1978.

Ronald A. Offret, Edgar Paul Boyko & Associates, Anchorage, for appellant.

James V. Gould, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

CONNOR, Justice.

Robert Chris Hansen entered a plea of guilty to larceny in a building in violation of AS 11.20.150.[1] He was sentenced to five years incarceration with the proviso that he be eligible for parole at the earliest possible date and that he receive psychiatric therapy to ease his transition back into the community. Hansen appeals this sentence as excessive.[2]

The instant offense occurred on November 3, 1976 while Hansen was shopping in an Anchorage department store. A store security guard observed Hansen "acting suspiciously" in the store's sporting goods section. He watched Hansen place an old sales receipt on a chainsaw box and leave the store with it. The guard apprehended Hansen in the store parking lot. Hansen described his thoughts leading up to the shoplifting as follows:

"I looked at them and remembered about 5 weeks previous my father and I had been cutting wood for our fireplace and his remarking three or four times how much he would like to have one (My folks live in Oregon and were visiting us for 4 weeks) to use when he and my mother go camping along the coast. I told my father that he would be more than welcome to take mine but he refused.

I thought of this and all the presents my parents had given me through the years and how wonderful it would be if I could give him a saw for Christmas. I also thought of course about that my wife and I had just bought this summer a new home and put everything we have saved for more than 9 years into.

I guess many many thoughts went through my mind as I looked at the saws. I wanted almost more than anything to please my father and could just imagine the expression on his face on Christmas day. If I could give him that saw. I walked around the store some more and out the front door. Outside a native man had just had a heart attack. The police, fire department, and paramedics were there to give him treatment. My father is 69 and has had one heart attack and is very overweight, again I thought of the chain saw and how pleased he would be to receive it at Christmas. I walked back into the store, again to the saws.

I thought there was a young man watching me, but then he seemed to disappear. On the one box that I picked up there was a sales receipt. I guess this is when I first really seriously thought about taking the saw. It seemed like nobody would know if I paid for the saw or not if they saw a sales receipt on the box. I took the saw and walked out the door when I was apprehended and arrested.

---

1. AS 11.20.150 provides:

 *Larceny in a building or vessel.* A person who commits the crime of larceny in a dwelling house, banking house, office, store, shop, or warehouse, or in a ship, steamboat, or other vessel, or who breaks and enters in the night or daytime a church, courthouse, meeting house, town house, college, academy, or other building erected or used for public uses, and commits the crime of larceny in it, is punishable by imprisonment in the penitentiary for not less than one nor more than seven years.

2. AS 12.55.120(a).

I know what I did was wrong and I am very sorry for doing so."

Hansen was 37 years old at the time of the offense. He was the first child born to his parents and spent his youth working for his father in th. family bakery as well as attending school. Following his father's example, Hansen was trained as a baker. Hansen depicts an ambivalent relationship with his father whom he describes as very demanding and never satisfied with Hansen's work despite the great effort Hansen exerted to please him.

Hansen moved to Anchorage in 1967 and has been steadily employed as a baker and warehouseman. His employers and co-workers submitted letters attesting to his stable and satisfactory work record. Hansen's financial status is sound. He owns a house and three vehicles and provides the primary source of support for his wife and two young children.

This is Hansen's third felony conviction. The first, wilfully and maliciously setting fire to and burning a motor vehicle, occurred in Iowa in 1961. He served 23 months in a reformatory and successfully completed parole one year later. A 1972 Alaska conviction for assault with a dangerous weapon[3] resulted in a five year sentence with a recommendation that Hansen receive psychiatric treatment. After serving six months, Hansen was transferred to a halfway house and placed on a work release program. One year later, Hansen was released on parole; parole was terminated after approximately three years. Hansen's prior record also includes four minor traffic violations.

After the assault charge was filed against Hansen, a court-ordered psychiatric report was submitted by Dr. J. Ray Langdon, dated February 28, 1972. Dr. Langdon stated that Hansen suffered from a dissociative mental illness and suggested that Hansen's criminal activity stemmed from that illness. Dr. Langdon indicated that Hansen's type of disorder was difficult to treat successfully, but a subsequent letter from Dr. Allen H. Parker, filed eight months later, indicated that Hansen had made sufficient improvement through therapy to warrant his release on parole.

Although the current offense is Hansen's first for theft, he informed the examining psychiatrists that he had an episodic stealing problem. In 1976, Dr. Parker wrote a second evaluation letter in which he characterizes Hansen's stealing as "probably obsessive" because Hansen "has an inability to resist it and a feeling of being forced." Hansen began therapy with Dr. Robert McManmon who diagnosed Hansen's illness as a bipolar affective disorder which is a variant of a manic-depressive disorder. Dr. McManmon, testifying at Hansen's sentencing hearing, distinguished Hansen's disorder from the classic manic-depressive pattern by the absence of any serious depressive episodes. Hansen's impulses were poorly controlled during the mood and energy upswings of this disorder. During manic episodes sufferers of this disease tend to develop an abnormal preoccupation (mania) toward some activity. Kleptomania, the impulse to steal without economic need, is a manifestation of this illness. Dr. McManmon further testified that Hansen's prior offenses were also likely manifestations of his disorder. The type of behavior indicated by those convictions is "known to occur in this disorder as one of the expressions of the poorly controlled behavior."

Although in 1971 Dr. Parker wrote that it would be difficult to treat Hansen's disorder, the drug lithium has since become acceptable treatment for controlling manic episodes. Lithium checks a patient's manic behavior until he can learn to control himself. Since lithium controls rather than cures, Dr. McManmon stated that complete assurances for Hansen's future behavior were impossible. However, he noted that Hansen had stabilized on lithium, had developed a good rapport with Dr. McManmon, and meaningful therapy had begun so that he "wouldn't anticipate any problems with [Hansen] continuing treatment now." Dr. McManmon believed that the best safe-

---

**3.** AS 11.15.220.

guard against further expression of the illness was continued treatment and it was preferable to have Hansen remain an active member of society. The prognosis was favorable.

The sentencing judge considered Dr. McManmon's testimony, a probation officer's report, and a presentence report. The probation officer, who wrote his report without the benefit of Dr. McManmon's opinion, recommended that Hansen's mental state and prior offenses militated against his release on probation. The author of the presentence report recommended that Hansen receive a five year suspended sentence and be placed on active probation for that term with the condition that Hansen continue therapy with Dr. McManmon. In the alternative, the presentence report suggested a halfway house setting to enable Hansen to continue working and supporting his family.

■ The court, remarking upon the difficulty of the case, described and applied the *State v. Chaney*, 477 P.2d 441 (Alaska 1970), sentencing criteria.[4] As to rehabilitation potential, Hansen had no trade or educational deficiencies to remedy. His problem was psychiatric. Were rehabilitation the only consideration, the judge stated that he would have granted probation with strict conditions regarding therapy and lithium treatment. Nevertheless, he feared that Hansen was dangerous during manic episodes, and thought that he should be isolated from society. Furthermore, the court believed that the goal of deterrence would only be achieved by a term of incarceration in order to provide Hansen with an "incentive to cooperate" and in recognition of the fact that this offense was Hansen's third felony conviction.

"Mr. Hansen is a third time offender and, therefore, his sentence should be near the maximum range permitted for this crime since he is not a first offender and is not entitled to the consideration that first offenders are generally given. To suspend imposition of sentence, or to provide straight probation would, in my opinion, unduly depreciate the seriousness of the crime. It also, I think, would not be appropriate in light of the fact that Mr. Hansen has been on probation in the past—not probation, but on parole; has been under supervision, and apparently the supervision has not been sufficient to prevent him from criminal activity. While the availability of lithium is a new thing, I'm not prepared to say that its absence in the past is completely expository of Mr. Hansen's difficulties with the law. Further, I do not feel that a short period of imprisonment is warranted, 15 to 30, or 65 days as suggested by [Hansen's counsel]. I think that is a good alternative to bring home to felons who have never had prior exposure to prison the seriousness of criminal acts and the risks to them that are attendant thereto. Mr. Hansen, on the other hand, has served 2 relatively long periods of time. . . . In summary then, while I think that if we looked only at rehabilitation and considered only rehabilitation, either a suspended imposition of sentence on terms similar to a methadone maintenance program, but substituting lithium for main—methadone, or alternatively a straight probation with a substantial suspended sentence would be sufficient to meet rehabilitative goals. I feel, however, that to impose either of those sentences would be to unduly depreciate the other sentencing goals and not take into sufficient consideration the necessity of preserving and protecting the system."

4. The *State v. Chaney* goals are:
 ". . . rehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might pos-

sess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves." (footnote omitted)
477 P.2d at 444.

Noting the possibility of adverse long-term effects on both Hansen and the community if Hansen did not receive treatment, the judge stated that if the five year term precluded Hansen from classification in a correctional center with psychiatric facilities, he would entertain a motion to reduce the sentence.

Hansen filed a notice of appeal on April 7, 1977. He was subsequently classified to the Juneau Correctional Center, and thereafter filed a motion to reduce his sentence pursuant to Rule 35(a), Alaska R.Crim.P.[5] At the ensuing hearing, Hansen offered the testimony of Roosevelt William Green, a correctional officer at the Eagle River Correctional Center and a member of the Division of Corrections classification committee. Green testified that Eagle River's rehabilitative program was psychologically based whereas the program at Juneau was designed primarily to correct educational or training deficiencies. Testimony from a Juneau institutional counselor substantiated the lack of available psychiatric assistance, but described various self-help programs planned by inmates. Green explained that the length of the term imposed is the controlling factor in classifying an inmate. A sentence of two or more years precludes admittance to Eagle River until the inmate has completed all but the remaining two years of his term. Had Hansen received a sentence of two years or less, he would clearly have been accepted at Eagle River, according to Green.

The court discussed the competing equities presented by the evidence—Hansen's stability at work and home, and his improvement through therapy versus his prior record and the danger of future non-cooperation with treatment—and decided that it would be inappropriate to alter or modify the sentence. He believed that, if not paroled earlier, Hansen would eventually be reclassified to Eagle River where he could reestablish relations with his family and Dr. McManmon. In the interim, Hansen could continue receiving lithium at the Juneau facility.

Hansen contends that five years is too severe a sentence for a relatively non-serious property offense when the offender has a solid family, employment and financial background and a promising prognosis for managing the psychiatric problems which precipitated his criminal behavior. The state responds that the judge properly applied the *State v. Chaney* objectives, finding this offense as part of a continuously felonious pattern where prior probation and parole have not proven effective.

While we commend the sentencing judge for his thoughtful and extensive evaluation of the case, our independent examination of the record convinces us that the sentence imposed was excessive and the case must be remanded for further sentencing proceedings.[6]

■ The Alaska Constitution enunciated the policy to be achieved in sentencing:

"Penal administration shall be based on the principle of reformation and upon the need for protecting the public."[7]

In applying these principles and the criteria established in *State v. Chaney, supra,* the sentencing judge has the principal duty of determining the priority and inter-relation-

---

**5.** Rule 35(a) provides:
 (a) *Correction or Reduction of Sentence.* The court may correct an illegal sentence at any time. The court may reduce a sentence within 60 days after the sentence is imposed, or within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the supreme court of the state or of the United States denying an application for relief.
After filing his Rule 35(a) motion, Hansen filed a motion with this court to stay his appeal pending the superior court's decision on his

Rule 35(a) motion. We granted Hansen's motion to stay on June 28, 1977 and the case was remanded to the superior court.

**6.** "The scope of appellate review requires that this court make its own examination of the record . . . . Such an independent examination of the justice of a particular sentence is necessary in order for the review process to function effectively."
*Perrin v. State,* 543 P.2d 413, 415 (Alaska 1975).

**7.** Alaska Const., Art. I, § 12.

ship of the sentencing goals. *Nicholas v. State,* 477 P.2d 447 (Alaska 1970). However, in resolving whether a particular sentence is either excessive or too lenient, this court will consider the proceedings below "in light of the nature of the crime, the defendant's character, and the need for protecting the public." *State v. Chaney, supra,* at 443.

We agree with the sentencing court that a third felony conviction is a serious matter that merits a sentence which reflects the community's condemnation and will deter both this offender and others. Nevertheless, we believe that five years is too harsh a sanction in view of the nature of the crime itself. Hansen's crime was shoplifting a chainsaw. He could have been charged with a misdemeanor.[8] The sentencing judge considered this, but stated that it was a proper exercise of prosecutorial discretion to charge Hansen with the felony of larceny in a building, given Hansen's prior record. While it is permissible to charge Hansen with the felony offense, thereby authorizing a maximum term of seven years [9], our inquiry still must focus on whether the penalty for that felony is out of proportion to the seriousness of the offense.

Hansen's theft involved no physical aggression or threats, nor did it result in any physical injury. The property was restored in full to the owner. In *State v. Wortham,* 537 P.2d 1117 (Alaska 1975), the sentencing judge imposed a four year sentence for

larceny in a building upon an offender with seven prior theft convictions of which four were for larceny in a building. The judge reasoned that even though the goal of rehabilitation had to be "discounted substantially" due to the poor results of prior sentencings, imposition of the maximum term of seven years was unwarranted as the crime itself did not "rise to the level of 'high social concern.'" 537 P.2d at 1120. We disapproved of the sentence as too lenient because the court had ordered that the four years run concurrently with a federal sentence, thereby providing no real sanction for the offense. 537 P.2d at 1121. We expressly stated, however, that under the particular circumstances of the case, the trial court's failure to impose the maximum term of seven years was not otherwise "clearly mistaken", even though the state argued that the seven prior convictions necessitated a finding that the defendant was the "worst type of offender" and should have received the maximum sentence. Despite the defendant's poor record, the circumstances of the offense did not merit a more severe sentence.[10] This is a similar case.

 Although Hansen was not given the maximum term of seven years, and was not classified as the "worst type of offender," the factors used for such classification process are also to be applied in reviewing sentences which approach the maximum sentence for the particular offense.[11] *Bor-*

---

**8.** AS 11.20.140 provides that larceny of property worth less than $250 carries a penalty of imprisonment for one month to one year, a fine of $25 to $250, or both.

**9.** In *Widermyre v. State,* 377 P.2d 536, 537 (Alaska 1963), we said:

"Our simple larceny statute [now AS 11.20.-140] became the law of Alaska at the same time [AS 11.20.150] became effective. Both statutes were enacted to serve separate purposes. [AS 11.20.150] has the purpose of treating any larceny committed in any dwelling house, banking house, office, store, shop, etc., as aggravated. The value of goods taken is not intended to be a factor by which to determine whether a particular theft is a felony or a misdemeanor. All larcenies committed on the premises mentioned are classified

as serious offenses against society and as felonies."

This view was reaffirmed in *Sidney v. State,* 468 P.2d 960, 964–65 (Alaska 1970).

**10.** *See also* the dissent, 537 P.2d at 1121.

**11.** "Some of the factors which this court has looked to in order to support such a characterization—and the imposition of a maximum term—have been prior criminal convictions, age, military records, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which has been considered to demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public."

*State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975).

*dewick v. State,* 569 P.2d 184, 185–86 (Alaska 1977).

"The American Bar Association has stated that in the vast majority of cases prison sentences are significantly higher than are needed to adequately protect the interests of the public and that, except for cases involving *particularly* serious offenses, dangerous offenders and professional criminals, maximum prison terms ought not to exceed 5 years. We agree." (emphasis in original; footnote omitted)

*Donlun v. State,* 527 P.2d 472, 475 (Alaska 1974); *See also State v. Trunnel,* 549 P.2d 550, 552 (Alaska 1976); The American Bar Association Standards, Sentencing Alternatives and Procedures § 2.1(d) (Approved Draft 1968). Under that standard Hansen's crime of shoplifting would not warrant a five year prison term.[12]

The second and third of the *Chaney* criteria for our review of a sentence require us to consider the defendant's character and the need for protecting the public. The record before us reveals a man suffering from a clearly diagnosed mental illness that until recently offered little hope of recovery. This is not a case where there is merely the suggestion of a mental disorder. Nor is it a case where psychiatric treatment is just generally advised. Hansen's psychiatrist had prescribed a course of drug treatment and therapy and reported to the sentencing court that Hansen had been cooperative and had a positive attitude toward the treatment.

The sentencing judge stressed that prior periods on parole had not prevented additional crimes, and he believed that Hansen had to be isolated from society during his manic episodes. However, Hansen's prior convictions were five and fifteen years before the current offense. During that time, Hansen has otherwise conducted his life in a normal and respectable manner. He has maintained steady employment, has been a good provider for his family, and has earned the reputation of a hard worker and a respectable member of his community. It is quite possible that the instant offense and the earlier convictions stemmed as much from psychological aberration as from a general criminal propensity. Dr. McManmon testified that the chances of Hansen engaging in future criminal activity would be greatly reduced by lithium treatment and continued therapy.

In *Mattern v. State,* 500 P.2d 228 (Alaska 1972), a 26 year old man with one prior conviction received an 18 month sentence for a burglary in which he took items of women's apparel. Noting that a psychiatrist had testified that the crime was the result of psychological difficulty rather than ordinary criminal intent, we reversed the sentence.

"We conclude, therefore, that incarceration in a penal institution would not only be inappropriate in Mattern's case but might even aggravate his present difficulties, making the eventual reintegration of the defendant into the community more difficult."

500 P.2d at 235. *See also Smith v. State,* 531 P.2d 1273 (Alaska 1975). Rehabilitation benefits society as well as the individual, by returning the offender as an enterprising member of society and by preventing future criminal behavior. Here, as in *Mattern v. State, supra,* "[t]he twin goals of penal administration in Alaska, reformation of the offender and the need to protect the public" would be best served by a sentence that accommodates treatment as well as protects society and reaffirms the societal norms. 500 P.2d at 235.

■ We agree that Hansen's prior record did compel some term of incarceration rather than straight probation. However, the particulars of this case—the clearly diag-

---

12. The sentencing judge directed that Hansen be eligible for parole at the earliest possible date. While that order must be followed by the parole board in determining an inmate's parole eligibility, the parole board still retains the discretion to determine if the prisoner should, in fact, be released. AS 33.15.080; AS 33.15.-230(a)(1); *See Shagloak v. State,* 582 P.2d 1034, Opn. No. 1688 (Alaska, August 11, 1978). For sentence review purposes, we must consider the entire sentence imposed without regard to possible parole dates. *Huff v. State,* 568 P.2d 1014, 1019 (Alaska 1977).

nosed mental illness; Hansen's amenability to treatment; the linkage of the mental illness with past anti-social behavior; the definite, prescribed course of treatment to mitigate the possibility of future criminal behavior; the stable home and work environment; and the factor that the monetary value of the property stolen was relatively low—lead us to conclude that the court below was clearly mistaken in imposing a five year sentence. Hansen has already served over a year in prison. We believe his sentence should now be revised to provide for imprisonment for the period of time he has served, but that he be placed upon probation for the remainder of his term. The terms of probation should be fixed by the superior court in appropriate new proceedings to reflect the importance of Hansen's cooperation with his psychiatric treatment and to supervise the course of his progress. We remand with directions that the superior court place Hansen on probation as expeditiously as possible.

REVERSED and REMANDED.

BOOCHEVER, Chief Justice, with whom RABINOWITZ, Justice, joins, concurring.

In Footnote 12 of the opinion, it is stated:

For sentence review purposes, we must consider the entire sentence imposed without regard to possible parole dates.

I agree that we must consider the entire sentence imposed, but I also consider it entirely appropriate to consider realistic probabilities of parole.

BURKE, Justice, dissenting.

I dissent. Given Hansen's prior record, I am unable to agree that the trial court erred in imposing a five year sentence.